(114 N. W. 996.)

---

## THE STATE OF NORTH DAKOTA v. JOHN B. HAZLET.

Opinion filed Oct. 18, 1907.

**Homicide — Burden Never Shifts to Defendant to Establish a Defense by Preponderance of Evidence — Justification or Excuse — Statutory Provision.**

1. Upon the trial of a person charged with murder, and in which one of the defenses relied on is justifiable homicide, or self-defense, it is prejudicial error to instruct the jury that the burden of proof is upon the defendant to establish such defense by a preponderance of the evidence.   The burden never shifts to the defendant to establish by a preponderance of the evidence either facts and circumstances in mitigation or excuse, or facts establishing an affirmative defense.   But under section 10,023, Rev. Codes 1905, where the commission of such homicide has been established by the state, the burden is upon defendant of proving circumstances of mitigation, excuse, or justification, unless the state's proof tends to show that such crime only amounts to manslaughter, or that defendant's act was justifiable or excusable.   But this does not mean that defendant is required to do more than show circumstances creating a reasonable doubt as to such matters.

**Same — Court Must Instruct Upon all Defenses Supported by the Evidence Whether Consistent or Inconsistent.**

2. A defendant in a criminal action is entitled to have submitted to the jury, with proper instructions, all defenses of which there is any support in the evidence, whether such defenses are consistent or inconsistent.   It is accordingly *held* that the trial court properly instructed the jury upon the theory of accidental killing as well as that of justifiable homicide.

**Excusable Homicide — Accidental Killing — Burden of Proof — Reasonable Doubt.**

3. The defense of accidental killing was not an affirmative defense in the sense that defendant was bound to furnish proof of circum-

stances tending to substantiate the same. It is a denial of criminal intent, and the burden was upon the state of proving such intent beyond a reasonable doubt.

**Evidence — Proof of Other Offense.**

4. It was prejudicial error to permit the state to prove that the defendant had committed the crime of sodomy. Proof of such crime in no way tended to prove defendant's guilt of the crime charged against him. The rule announced in State v. Kent, 5 N. D. 516, 67 N. W. 1052, 35 L. R. A. 518, is *held* not applicable to the case at bar.

**Instruction — Accused's Statements out of Court.**

5. The trial court charged the jury that, if they believed from the evidence that the defendant had made statements out of court against himself, they had a right to treat such statements as true or false, just as they believed them true or false when considered in the light of all the other facts and circumstances in the case. *Held,* not error.

**Homicide — Apprehension of Danger — Reasonableness of Defendant's. Belief — Instruction.**

6. The trial court charged the jury as follows: "It is not enough that the party killing another believed himself in danger from the person killed, unless the facts were such that the jury, in the light of all the facts and circumstances known to the slayer or believed by him to be true, can say he had reasonable ground for such belief." *Held,* correct. But *held,* further, that defendant's conduct is not to be judged by what a reasonable cautious person might or might not do or consider necessary to do under like circumstances, but what he himself, in good faith, honestly believed and had reasonable grounds to believe was necessary for him to do to protect himself from apprehended death or great bodily injury. The reasonableness of defendant's belief must be determined from his standpoint, and not from the standpoint of an ideal, reasonable person. (Spalding, J., dissents from the reasons given for sustaining said instructions.)

**Same — Heat of Passion — Cooling Time — Defendant Judge of the Situation.**

7. Where the evidence shows that a homicide was committed in the heat of passion and with provocation, the jury, in determining whether there was sufficient cooling time for the passion to subside and reason to resume its sway, should be governed, not by the standard of an ideal reasonable person, but from the standpoint of the defendant in the light of all the facts and circumstances disclosed by the evidence. Whether there was cooling time is a question varying with each particular case and with the temperament of the party and it is accordingly *held* that the instructions given by the trial court

upon this subject constituted prejudicial error. (Spalding, J., dissenting.)

**Same — Evidence.**

8. Certain rulings of the trial court in the admission and rejection of testimony examined, and *held,* prejudicial error.

Appeal from District Court, Sargent county; *Allen,* J.

John B. Hazlet was convicted of murder in the first degree, and he appeals.

Reversed, and new trial ordered.

*W. S. Lauder* and *S. A. Sweetman,* for appellant.

The New York and California cases relied upon in  State  v. Yokum, 79 N. W. 835, upon which the trial judge based his instructions, and U. S. v. Crow Dog, 3 Dak. 106, do not apply; and the true rule is, if from the whole case, including the killing, the presumption of fact arising therefrom, and the evidence of justification, the jury entertain a reasonable doubt, as to the defendant's guilt, they must acquit him.   Section 10023, Rev. Codes 1905; People v. Neary, 37 Pac. 943; People v. Powell, 25 Pac. 481; State v. Conahan, 38 Pac. 996; People v. Elliot, 22 Pac. 207; People v. Scott, 56 Pac. 102; People v. Lanagan, 22 Pac. 482; People v. Dillon, 30 Pac. 150; People v. Tidwell, 12 Pac. 61; People v. Callaghan, 6 Pac. 49; Barton v. Territory, 85 Pac. 730; State v. Earnest, 42 Pac. 359; Kent v. People, 9 Pac. 852; People v. Susser, 75 Pac. 1093; Trumble v. Territory, 21 Pac. 1081; 6 L. R. A. 384; 6 Enc. of Evidence, 593, 597; People v. Downs, 25 N. E. 988; People v. Riordan, 22 N. E. 455; People v. Stokes, 53 N. Y. 164; Brotherton v. People, 75 N. Y. 159; O'Connell v. People, 87 N. Y. 377; People v. Pallister, 33 N. E. 741; People v. Shanley, 63 N. Y. Supp. 499; 21 Cyc. p. 882, note 76; State v. Bone, 87 N. W. 507; State v. Shea, 74 N. W. 687; State v. Schweitzer, 6 L. R. A. 125; State v. Usher, 102 N. W. 101; Copps v. State, 97 N. W. 210; Lillianthol Tobacco Co. v. U. S., 97 U. S. 266, 24 L. Ed. 901; Boykin v. People, 45 Pac. 419; Wascaser v. People, 25 N. E. 564.

The court should have charged that the defendant should not be convicted if upon the whole case, the jury entertained a reasonable doubt of his guilt.  People v. Downs, 25 N. E. 988; Tilley v. State, 24 Tex. App. 251; 5 Am. St. Rep. 882.

Instruction as a whole must be consistent and not misleading. 1 Blashfield on Instructions, sections 73 to 78, and note 93.

Upon a trial for one offense, proof that accused committed another is inadmissible. Ferris v. People, 129 Ill. 521, 16 Am. St. Rep. 283; State v. Raymond, 53 N. J. L. 206, 2 Am. St. Rep. 405; People v. Molineux, 61 N. E. 286; People v. Meyers, 15 Pac. 95; People v. Sharp, 14 N. E. 319; Shaffer v. Commonwealth, 77 Pa. St. 63; Martin v. Commonwealth, 19 S. W. 580; Cotton v. State, 17 So. 372; State v. Kent, 5 N. D. 516, 67 N. W. 1052.

The test of justification is, whether accused in good faith did believe that the danger was imminent, and acted honestly in that belief. Wharton on Crim. Law (8th Ed.) 488; People v. Lennon, 15 Am. St. Rep. 259.

Assuming that defendant intentionally killed deceased under provocation, the question for the jury is not whether a reasonable time had elapsed for an *ordinary* man to cool, but whether the *defendant himself* had in fact cooled. 1 Wharton on Crim. Law, (8th Ed.) 480; State v. Grugin, 71 Am. St. Rep. 553.

*T. F. McCue,* Attorney General, *E. W. Bowen,* State's Attorney, and *Chas. E. Wolfe,* for respondent.

It is competent to prove motive for homicide. Rice on Crim. Evidence, 447, Par. 281.

A separate offense, when allied to the motive in the homicide may be proven. State v. Kent, 5 N. D. 550, 67 N. W. 1052, 35 L. R. A. 518.

The instruction, "it must appear that the circumstances were sufficient to excite the fears of a reasonable man and the party killing acted under the influence of those fears," is correct. 2 Blashfield on Instructions to Juries, par. 1516; Mize v. State, 36 Ark. 661; State v. Stockton, 61 Mo. 382; Wall v. State, 51 Ind. 543; Thompson v. State, 54 Ga. 47; State v. Usher, 111 N. W. 811; Judge v. State, 58 Ala. 406; Davis v. People, 88 Ill. 350; Jackson v. State, 6 Baxter, Tenn., 452; State v. VanSant, 80 Mo. 67; Crews v. People, 120 Ill. 317; Close v. Cooper, 34 Ohio St. 98.

The instruction as to "cooling time," was correct. 2 Blashfield on Instructions, Par. 1505; State v. Shelleday, 8 Iowa, 485; State v. Cants, 1 Spear S. C. 384; Kilpatrick v. Commonwealth, 31 Pa. 198; Smale v. Commonwealth, 91 Pa. 304.

Instruction as to burden of proof was correct.  Rev. Codes 1905, section 10023.

This section is from California and was approved in People v. Milgate, 5 Cal. 127; People v. Stonecifer, 6 Cal. 405; People v. Hong Ah Duck, 61 Cal. 387.

The adoption of a statute of a sister state, brings with it the construction placed upon it by the latter.  Oswald v. Moran, 8 N. D. 111, 77 N. W. 281; Cass County v. Security Improvement Co., 7 N. D. 528, 75 N. W. 775; Stutsman Co. v. Wallace, 142 U. S. 293, 12 L. Ed. 227; People v. Ritchie, 12 Utah, 193.

Subsequent reversal of a decision construing a statute by the state of its origin, is without effect in the state of adoption.  Stutsman Co. v. Wallace, supra; Barnes v. Lynch, 59 Pac. 995.

When defendant seeks to prove a fact in opposition to the presumption of guilt arising from the proof or admission of the homicide, he must do so "to the satisfaction of the jury by a preponderance of the evidence."  People v. Schryver, 42 N. Y. 1; State v. Yokum, 79 N. W. 835; State v. Schmidt, 19 S. D. 585; Tanks v. State, 71 Ark. 459; Alderman v. Territory, 60 Pac. 876; People v. Mathai, 67 Pac. 694; Kent v. People, 9 Pac. 852; Murphy v. People, 37 Ill. 447; Territory v. Rowland, 8 Mont. 110; People v. Tidwell, 4 Utah, 49; State v. Bertrand, 3 Or. 61; Dixon v. State, 13 Fla. 663; Bell v. State, 69 Ga. 752; State v. Tabor, 95 Mo. 585; State v. Keith, 9 Nev. 15; State v. Barringer, 19 S. E. 275; Commonwealth v. Drum, 58 Pac. 9; Gibson v. State, 89 Ala. 121; Commonwealth v. Webster, 59 Mass. 295; Hawthorne v. State, 58 Miss. 778.

Fisk, J.  Appellant, having been convicted in the district court of Sargent county of the crime of murder in the first degree, and sentenced to imprisonment in the penitentiary for life, brings the case to this court for review of alleged errors of law claimed to have been committed by the trial court in giving certain instructions to the jury and in refusing to give certain other instructions requested by his counsel; also in making certain rulings relating to the admission and rejection of testimony.  Eighty-two assignments of error are set forth in appellant's brief, but we will notice those only which have been discussed  therein,  treating those not discussed as abandoned under rule 14 of this court.

We will dispose of these assignments in the order in which they are presented in appellant's printed brief, first calling attention

to a few of the salient facts which are apparently not in. dispute and which are narrated in the brief of appellant's counsel, as follows: "It is uncontradicted that at about the hour of 9 o'clock a. m. of the 16th day of March, 1906, the deceased went from his home to a small butcher shop in the village of Veda. So far as known, he had no business there, but went simply to visit with the young man in charge of the place. It is conceded that at the time he had a loaded revolver on his person. About 9:30 o'clock defendant also called at this same butcher shop. It was, and is, claimed by the defense that the defendant called at the butcher shop on business, and that at the time he did not know that the deceased was there. On going to the butcher shop, the defendant carried with him a loaded shotgun. His purpose in taking the gun with him, as claimed by defendant, appears in the testimony. It is uncontradicted that immediately upon defendant entering the room a quarrel arose between defendant and deceased; that the shotgun which at the time was in the hands of defendant, was discharged, and the deceased instantly killed. On behalf of the defendant, it was contended: First, that the deceased attempted to take the gun from the possession of the defendant, and that while the two were struggling for the possession of the gun it was accidentally discharged, and deceased was killed; and, second, that if defendant consciously and intentionally fired off the gun, he did so in necessary self-defense. The two men had been personal enemies for some time prior thereto, and the deceased had made frequent and vicious threats against the life of defendant."

The first error assigned is predicated upon the giving of the instruction relative to the burden of proof as to the questions of excusable and justifiable homicide, as follows: "If, in this case, therefore, the killing by the defendant of Van Buskirk has been proved to your satisfaction beyond a reasonable doubt, then the burden of proving circumstances of mitigation, or circumstances that justify or excuse that killing, devolves upon the defendant, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justified or excusable. Under such circumstances, the defendant must prove circumstances in mitigation, excuse, or justification by a preponderance of the evidence, and it is not sufficient that the proof as to such circumstances raises a reasonable doubt as to such mitigation, excuse or justification.

In other words, with the exceptions just stated, when a man takes human life, and the killing is proved or admitted, and he claims justification, as that the killing was in self-defense, or that it was excusable, as that the killing was accidental, it is not sufficient for him to raise a reasonable doubt whether he was justified or excusable or not, but he must go one step further, and give satisfactory evidence that he was justified or excused." Upon the same subject, appellant's counsel asked for, and the court refused, the following instruction: "The rule of law that the defendant must be acquitted unless a jury are satisfied as to his guilt beyond a reasonable double applies with equal force to self-defense, and if the jury, upon the whole case, entertain a reasonable doubt as to whether the defendant killed the deceased in self-defense, you must give the defendant the benefit of the doubt, and acquit him."

To the giving of the first instruction, and to the refusal to give the latter, exceptions were duly taken and preserved in the record. These assignments of error will be considered together. We entertain no doubt that the giving of the instruction complained of, and the refusal to instruct as requested, was prejudicial error requiring a reversal of the judgment and the ordering of a new trial. The instruction asked for correctly stated the law, and the instruction given was clearly erroneous, according to the overwhelming weight of authority, as well as upon principle and reason. The question of justifiable, as well as excusable, homicide, as properly held by the trial court, was, under the evidence, necessarily in the case. It is, we think, a well-established rule in criminal jurisprudence that a defendant is entitled to have submitted to the jury, with proper instructions, all defenses of which there is any support in the evidence, whether such defenses are consistent or inconsistent. That there was evidence sufficient to require submission to the jury of the questions both of excusable and justifiable homicide we think clearly appears from an examination of the record. In a recent case in the Court of Appeals of New York, under facts similar to those in the case at bar, the rule was distinctly, and we think correctly, announced, that the question of self-defense was raised, notwithstanding the fact that defendant contended that the shot which killed deceased was fired accidentally, and that it was the court's duty to charge the jury fully upon the law of self-defense. We quote from the opinion: "It is true

that in a portion of her testimony she characterized the killing as accidental, and it was upon the theory of a defense of accidental killing that the trial judge based his ruling (excluding evidence of self-defense) ; but what she may have said to that effect in response to questions put by the trial judge or by counsel must be taken in connection with her previous statements. She had testified that she sought to prevent his getting possession of the weapon because of her apprehension that he would use it upon her, and that she believed from the language used toward her that he was going to take her life. Upon her testimony, the facts were that the deceased was killed while they were struggling for the possession of the weapon, and that she was justified, by reason of her fear, in resisting his efforts to obtain it, from which it would follow, whether it was discharged by her intentionally or an accident of the struggle, that she was not liable to the charge in the indictment. She may have believed, or upon reflection may now believe, that the killing was an accidental incident; but, under her plea of not guilty how can she be deprived of any evidence tending to acquit her on the ground that she was acting under apprehension of great bodily harm? Such a ruling would be neither just nor human." People v. Taylor, 177 N. Y. 237, 69 N. E. 534.

Having reached the conclusion, as we do, that defendant had a right to have the question of self-defense submitted to the jury, we will briefly consider the instructions given and refused relative to the burden of proof as to such defense. Section 10023, Rev. Codes 1905, provides: "Upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolve upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable." The respondent's counsel, as well as the trial court, evidently rely, in support of the instruction complained of, upon the above section as construed in the case of State v. Yokum, 11 S. D. 544, 79 N. W. 835, and certain early decisions of California and one in Dakota Territory, also People v. Schryver, 42 N. Y. 4, 1 Am. Rep. 480, construing the same or a similar statute. If the construction of this statute as announced by our sister state of South Dakota in State v. Yokum and as contended for by respondent's

counsel, be sound, then there is no escape from the logic of appellant's argument that in all cases, in which the facts and the issues are similar to those in the case at bar the burden is, in effect, cast :upon defendant to prove his innocence. If, as the trial court 'charged the jury, "it is not sufficient for him [defendant] to raise a reasonable doubt whether he was justified or excusable or not, but he must go one step further and give satisfactory evidence that he was justified or excused," then it is too plain for discussion that defendant not only has the burden of bringing forth evidence sufficient to create a reasonable doubt as to his guilt because of matters relied upon in excuse or justification, but he is required to satisfactorily prove the truth of the defense thus relied upon, and consequently to prove his innocence, by a preponderance of the evidence or by satisfactory proof. With due deference to the few decisions to the contrary, we do not think such a construction is warranted by the language used in the statute. Under the terms of the section aforesaid, if the proof on the part of the prosecution tends to show that the defendant's act was excusable or justifiable, there is no burden cast upon defendant of proving anything. Such being the express provisions of the section, we are at a loss to understand upon what process of reasoning it can be said that, where the proof on the part of the prosecution does not tend to show any circumstances of justification or excuse, the burden is upon defendant to do more than furnish such proof. In other words, a fair and reasonable construction of this statute, as we construe it, is that there must be circumstances disclosed by the evidence which tend to show justification or excuse; and that where the state's case does not disclose such circumstances, the burden devolves upon defendant to disclose the same. But requiring proof of circumstances tending to show a fact is not the equivalent of requiring proof of the fact itself. If a defendant is required to prove the fact that the killing was justifiable or excusable, he is thereby necessarily required to prove his innocence.

The authorities cited and relied upon by the Supreme Court of South Dakota in State v. Yokum, supra, are, in our opinion, without support on principle, and are opposed to almost the unanimous holdings of the courts of this country. Moreover, at the time this decision was rendered, the early California cases, as well as People v. Schryver, supra, therein cited, had been overruled by later decisions in these states. See People v. Bushton, 80 Cal. 160,

22 Pac. 127, and Stokes v. People, 53 N. Y. 164. In People v. Bushton, the Supreme Court of California, in considering the correctness of an instruction almost identically the same as the one in the case at bar, said: "The section casts upon the defendant the burden of proving circumstances of mitigation, or that justify or excuse the commission of the homicide. This does not mean that he must prove such circumstances by a preponderance of the evidence, but that the presumption that the killing was felonious arises from the mere proof by the prosecution of the homicide, and the burden of proving circumstances of mitigation, etc., is thereby cast upon him. He is only bound under this rule to produce such evidence as will create in the mind of the jury a reasonable doubt of his guilt of the offense charged. * * * It can make no difference whether this reasonable doubt is the result of evidence on the part of the defendant tending to show circumstances of mitigation, or that justify or excuse the killing, or from other evidence coming from him or the prosecution. The well-settled rule that a defendant shall not be convicted unless the evidence proves his guilt beyond a reasonable doubt applies to the whole and every material part of the case, no matter whether it is as to the act of killing, or the reason or manner of its commission. The section under consideration was not intended to and does not change the rule as to the weight of the evidence. It simply provides that, certain facts being proved, the presumption of guilt shall follow, unless the defendant himself proves certain other facts. It does not attempt to provide the degree of proof required of him, but leaves the rule as to the degree of evidence necessary to convict as it was before. The jury should have been instructed that the burden of proving circumstances of mitigation or that justify or excuse the killing devolves upon the defendant; but that if upon the whole case they entertained a reasonable doubt from the evidence as to his guilt, he should be acquitted. Any other rule as to the weight of the evidence makes one measure applicable to one part of the case, and a different one to another part, and leads to confusion. In justice to the learned judge of the court below, we must say that the instruction given is warranted by some of the decisions of this court, * * * but on mature consideration we feel constrained to hold that they were based upon an erroneous construction of section 1105 of the Penal Code." In Stokes v. People, supra, Rappalo, J., made use of the following apt language in

disposing of a similar question: "It is a cardinal rule in criminal prosecutions that the burden of proof rests upon the prosecutor; and that if, upon the whole evidence, including that of the defense as well as of the prosecution, the jury entertain a reasonable doubt of the guilt of the accused, he is entitled to the benefit of that doubt. The jury must be satisfied on the whole evidence of the guilt of the accused, and it is clear error to charge them, when the prosecution has made out a prima facie case, and the evidence has been introduced tending to show a defense, that they must convict, unless they are satisfied of the truth of the defense. Such a charge throws the burden of proof upon the prisoner and subjects him to a conviction, though the evidence on his part may have created a reasonable doubt in the minds of the jury as to his guilt. Instead of leaving it to them to determine upon the whole evidence whether his guilt is established beyond a reasonable doubt, it constrains them to convict, unless they are fully satisfied that he has proved his innocence."

The correctness of the rule announced in these cases has never since been questioned in those states, but, on the contrary, they have repeatedly been adhered to in numerous later decisions which we will hereafter cite. The case of United States v. Crow Dog, 3. Dak. 106, 14 N. W. 437, was based upon those early decisions, which, as we have above seen, have been overruled. The correct rule is so firmly settled that we deem it unnecessary in this opinion to cite all of the authorities in support thereof, but we cal attention to the following: People v. Neary, 104 Cal. 373, 37 Pac. 943; People v. Powell, 87 Cal. 348, 25 Pac. 481, 11 L. R. A. 75; People v. Scott, 123 Cal. 434, 56 Pac. 102; Barton v. Territory (Ariz.) 85 Pac. 730; People v. Downs, 123 N. Y. 558, 25 N. E. 988; People v. Riordan, 117 N. Y. 71, 22 N. E. 455; People v. Pallister, 138 N. Y. 601, 33 N. E. 741; People v. Shanley, 49 App. Div. 56, 63 N. Y. Supp. 449; State v. Conahan, 10 Wash. 268, 38 Pac. 996; State v. Earnest, 56 Kan. 31, 42 Pac. 359; Trumbull v. Territory, 3 Wyo. 280, 21 Pac. 1081, 6 L. R. A. 384; Appleton v. People, 171 Ill. 473, 49 N. E. 708; Gravely v. State, 38 Neb. 871, 57 N. W. 751; Peyton v. State, 54 Neb. 188, 74 N. W. 597; State v. McGarry, 111 Iowa, 709, 83 N. W. 718; State v. Usher, 127 Iowa, 287, 102 N. W. 101; State v. Patterson, 45 Vt. 308, 12 Am. Rep. 200; Boykin v. People, 22 Colo. 496, 45 Pac. 419; 21 Cyc. pp. 881-883, and cases cited; 25 Am. & Eng. Enc. Law (2d.

Ed.) p. 283, and cases cited; 5 Am. & Eng. Enc. Law (2d Ed.) p. 33, and cases cited. In People v. Shanley, 63 N. Y. Supp. 449, 49 App. Div. 56, the true rule is tersely stated as follows: "When the people have made a case which establishes the guilt of the defendant beyond a reasonable doubt, it may always be said that the defendant is called upon to answer, and in a sense it may be said that he is required to establish, his defense. In this sense he bears a burden; but he is not required to satisfy the jury of anything. If his proof falls short of establishing justification, it may be sufficient to establish a defense by creating a reasonable doubt of his guilt, and if it comes to this extent he is entitled to an acquittal."

The giving of the foregoing instruction was clearly prejudicial error for another reason. It was contended by defendant that the deceased met his death through an accidental discharge of the gun while they were struggling for its possession. This was not an affirmative defense in the sense that defendant was bound to furnish proof of circumstances tending to substantiate the same. As stated in 21 Cyc. p. 884: "The defense that the homicide was accidental is in no sense an affirmative defense. It is a denial of criminal intent, and throws upon the prosecution the burden of proving such intent, beyond a reasonable doubt, and the accused is not required to sustain such defense by a preponderance of the testimony"—citing State v. McDaniel, 68 S. C. 304, 47 S. E. 384, 102 Am. St. Rep. 661, and State v. Cross, 42 W. Va. 253, 24 S. E. 996. But even if it could be considered an affirmative defense in the sense that self-defense is an affirmative defense, what we have heretofore said regarding the burden of proof would be applicable thereto, and we do not think that such error was cured by the following instruction: "And I charge you, further, that you cannot find the defendant guilty unless you find beyond a reasonable doubt that he actually and intentionally fired the shot which caused the death. If you have a reasonable doubt as to whether the gun was discharged accidentally or discharged by the conscious intentional act of defendant, you must give the defendant the benefit of such doubt and acquit him." The jury may well have understood from the other instruction that they were not at liberty to acquit the defendant unless he proved by a preponderance of the evidence or by satisfactory evidence that the accident occurred as he claimed, viz., by an accidental discharge of the gun.

What we have said regarding the degree of proof required by a defendant to show circumstances tending to prove justification applies, of course, equally to proof of circumstances in mitigation of the offense charged. In order to reduce the degree of the crime from murder in the first degree, as charged, to that of a lesser offense, the burden was not upon the defendant to show by a preponderance of the evidence, or by satisfactory evidence, such mitigating circumstances. It was merely incumbent upon him, where such mitigating circumstances were not disclosed by the state's case, to furnish evidence tending to show the same, sufficient to raise in the minds of the jury a reasonable doubt from the whole evidence as to the degree of the crime. In other words, what we have said in regard to proof of circumstances tending to show justification of defendant's act applies equally to matters tending to show mitigation thereof. This disposes of two of appellant's most important assignments of error; but, in view of the fact that a new trial is to be had, we will briefly notice his other assignments.

The state was permitted, over defendant's objection, to show that defendant had committed the crime of sodomy. If this ruling was error, it requires no argument to show that it was prejudicial. It certainly was well calculated to arouse prejudice in the minds of the jury against the defendant. As stated by appellant's counsel: "This evidence was, as to the defendant, simply paralyzing." "The inevitable effect of this testimony was to inflame the minds of the jury against the defendant, to excite their indignation, and to rouse their hatred." Did the court err in admitting this testimony? The general rule is that evidence that the defendant on trial has committed other crimes is irrelevant. Farris v. People, 129 Ill. 521, 21 N. E. 821, 4 L. R. A. 582, 16 Am. St. Rep. 283; State v. Raymond, 53 N. J. Law, 260, 21 Atl. 328; People v. Sharpe, 107 N. Y. 427, 14 N. E. 319, 1 Am. St. Rep. 851; People v. Molineaux, 168 N. Y. 264, 292, 309, 310, 61 N. E. 286, 62 L. R. A. 193; People v. Meyer, 73 Cal. 548, 15 Pac. 95. To this general rule there are certain well-recognized exceptions, as where the collateral crime is so related to or connected with the one for which the defendant is on trial that proof of the former furnishes some evidence of the commission of the latter, and also where such collateral crime furnishes evidence of a motive for the commission of the latter. Other exceptions to the general rule are also recognized, but it is unnecessary here to refer to them. See 12 Cyc.

406-412, and cases cited; also, People v. Molineaux, supra. Respondent's counsel seek to justify the introduction of this testimony upon the ground that it tended to show a motive for the commission of the crime charged, and they rely upon the opinion of this court in State v. Kent, 5 N. D. 516, 67 N. W. 1052, 35 L. R. A. 518, as supporting the ruling of the trial court in admitting the same. In the Kent Case, it was said: "There is ample authority for the proof of collateral crimes for the purpose of showing a motive for the commission of the crime for which the defendant is being tried; the limitation being that such collateral crime must bear such a relation to the crime for which the party is being tried that a court can clearly see that, if established, it will have a tendency to furnish a motive for the commission of the other crime. * * * The proof of the commission of the crime or crimes at Medina, Ohio, would not, as we view it, have any legal tendency to furnish a motive for the murder of Mrs. Kent, but for the declared state of mind, according to Swidensky's testimony, under which Kent was laboring." In that case the ruling of the trial court in admitting such testimony was sustained upon the ground that it tended to show a motive on Kent's part to murder his wife in order to shield himself from exposure and consequent disgrace and punishment for the commission of a crime or crimes committed many years previous thereto at Medina in the state of Ohio. As stated by the court, the facts of the case were unusual. There was no direct testimony connecting defendant with the crime except that of the witness Swidensky, an accomplice, who testified to a conspiracy entered into at the solicitation of Kent to commit such crime; he having testified to statements made to him by Kent as to the latter's motives for such conspiracy. Kent on direct examination flatly denied Swidensky's testimony in all particulars and denied any connection with the crime. Upon cross-examination he was required, over objection, to state the facts complained of, and this court held that the testimony was competent and relevant for the purpose of corroborating Swidensky's testimony relative to Kent's complicity in the crime and his motive therefor. The court said, however, that "the proof of the commission of the crime or crimes at Medina, Ohio, would not, as we view it, have had any legal tendency to furnish a motive for the murder of Julia C. Kent, but for the disclosed state of mind, according to Swidensky's testimony, under which Kent was laboring."

While the decision in that case, under the particular facts there disclosed, was no doubt sound, we think the exception to the general rule forbidding the proof of collateral offenses was carried to its utmost limit, and we are not disposed to enlarge upon its application as there applied. We are convinced that the facts in the case at bar do not warrant the application of such exception. The facts in the two cases are radically different, and the reasons given by this court in the Kent case for applying the exception to the rule are absent in the case at bar. As we view the authorities, it would not be proper, in any event, to permit proof that defendant in fact committed the crime of sodomy, conceding that it was proper to admit proof that the deceased had commenced, or threatened to commence, criminal proceedings against defendant for such offense. See Williams v. State, 69 Ga. 11; Martin v. Com., 93 Ky. 189, 19 S. W. 580; Cotton v. State (Miss.) 17 South. 372. For a correct statement of the general rule regarding proof of collateral crimes, together with the exceptions thereto, see 12 Cyc. 405-412, and numerous cases cited. We are of the opinion therefore that it was prejudicial error to admit this testimony.

The next assignment of error argued by appellant's counsel calls in question the correctness of the following instruction: "I instruct you, further, that, if any statements of the defendant made out of court have been proved in this case, you may take them into consideration with all the other facts and circumstances proved. What the proof may show, if anything, that the defendant has said against himself, you have the right to assume to be true because against himself; but anything you may believe from the evidence that the defendant has said in his own behalf you may treat as true or false, just as you believe it true or false, when considered with a view to all the other facts and circumstances in the case." Counsel contend that there is no legal implication that a statement against interest is true, and that the giving of said instruction was an unwarranted invasion of the province of the jury. In this we think counsel are in error. We understand the rule to be that admissions and declarations made against interest are admissible because of the strong probability of the truth thereof. The jury were not told that they should treat such statements as true, but simply that they had the right to assume that they were true. We think there is a natural presumption of the truth of such statements, in the absence of any proof to the contrary. The in-

struction would, no doubt, be in better form if qualified so as to read: "In the absence of any proof to the contrary, the jury may accept as true any statements made against interest," etc. But we think the instruction as given would be understood by the jury the same as if it was thus qualified. The instruction was apparently taken from 2 Blashfield on Instructions to Juries, section 886. A similar instruction was approved in State v. Darrah, 152 Mo. 522, 54 S. W. 226.

It is next contended that the giving of the following instruction constituted error: "It is not enough that the party killing another believed himself in danger from the persons killed, unless the facts were such that the jury, in the light of all the facts and circumstances known to the slayer, or believed by him to be true, can say he had reasonable ground for such belief." We think the above instruction, when considered in the light of the other instructions given upon the subject of justifiable homicide, was correct. Appellant's counsel evidently construe said instruction as stating, in effect, that the reasonable ground for belief of danger must be such as would be entertained by a reasonably cautious person under like circumstances; but we do not so construe it. The jury were, in effect, instructed that they must determine the question of the reasonableness of defendant's belief from his standpoint, viewed in the light of all the facts and circumstances known to him or believed by him to be true. We fully agree with appellant's counsel that defendant's conduct is not to be judged by what a reasonably cautious person might or might not do or consider necessary to do under like circumstances, but what he himself in good faith honestly believed and had reasonable ground to believe was necessary for him to do to protect himself from apprehended death or great bodily injury. While there is a diversity of judicial opinion upon the question, we think the better rule is that the circumstances bearing upon the reasonableness of defendant's belief must be viewed from the standpoint of defendant alone, and that he will be justified or excused if such circumstances were sufficient to induce in him an honest and reasonable belief that he was in danger. Defendant's belief of danger must be based upon reasonable grounds, as stated in the instruction; but, as before stated, the authorities are divided as to the method of determining the existence or nonexistence of such grounds. In some states the rule is that where a man acts upon appearances he

does so at his peril; the test of reasonableness being that the circumstances surrounding him at the time of the homicide must have been such as would induce a reasonably cautious man to believe that he was in imminent peril, and that it was necessary for him to kill his assailant in order to protect himself from death or great bodily harm, while the rule in other states is that the circumstances must be viewed from the standpoint of defendant alone, and that he will be justified or excused if such circumstances were sufficient to create in his mind an honest and reasonable belief that he was in such imminent danger. The question being an open one in this jurisdiction, we have decided to adopt the latter rule as the more just; but, as before stated, we do not think the instruction excepted to conflicts with the rule as here adopted. Mr. Freeman has contributed a very able note upon this question in 74 Am. St. Rep. 717-726, in which the authorities are collated. See, also, 21 Cyc. 815-819, and Wharton on Homicide (3d Ed.) section 284 et seq.

Appellant also assigns error upon the giving of the following instruction to the jury: "The court instructs the jury that a provocation cannot be considered for the purpose of reducing from a higher to a lower degree of homicide, unless the provocation was so recent that the homicide was committed in a 'transport of passion' occasioned by the provocation. If between the provocation and the homicide there is sufficient time for the blood to cool, and for the passion to subside, and reason to interpose, the provocation however great, cannot be considered. And the court instructs you that the reasonable time within which the law presumes that the blood has cooled, and the angry passions aroused by the provocation have subsided, is the time within which an ordinarily reasonable man would have cooled under like circumstances. In applying this test, all the circumstances attending the homicide are to be taken into consideration, including the nature and extent of the provocation, if any, the physical and mental condition of the defendant, his condition in life, and particular situation at the time of the homicide. In a word, all the pertinent circumstances may be considered, and the time in which an ordinary man in like circumstances would have cooled is the reasonable time." It is contended that the giving of the foregoing instruction was erroneous for two reasons: First, the jury were told that provocation could not be considered, either to excuse, justify or mitigate the offense, un-

less the provocation was so recent that the homicide was committed in a "transport of passion" occasioned by that provocation. It is said that to mitigate the offense to manslaughter it would be only necessary to show such a condition of excitement or passion as that the jury could see that in his condition the defendant could not have committed the homicide with deliberate malice, and with a premeditated design to kill. Second, it is contended that the instruction was erroneous for the reason that it told the jury that in determining whether the offense was murder, or some lesser crime, as depending upon whether the homicide was committed in a passion or in cool blood, that the time within which the defendant was presumed to have cooled, should the jury find that there had been provocation, was the time in which an ordinary man in like circumstances would have cooled. We think both grounds of objection to the instruction are sound. Where the evidence shows that a homicide was committed, in the heat of passion and with provocation, we think the jury, in determining whether there was sufficient cooling time for the passion to subside and reason to resume its sway, should be governed, not by the standard of an ideal, reasonable man, but they should determine such question from the standpoint of the defendant in the light of all the facts and circumstances disclosed by the evidence. We think the correct rule is stated by Mr. Wharton, in his work on Criminal Law (vol. 1, section 480 [8th Ed.] ), as follows: "Whether there has been cooling time is eminently a question varying with the particular case, and with the temperament of the party. There are some provocations, which, with persons of even temperament, lose their power in a few moments; while there are others which rankle in the breast for days and even weeks, producing temporary insanity. Men's temperaments also vary greatly as to the duration of provocation, and it must be remembered that we must determine the question of malice in each case, not by the standard of an ideal, 'reasonable man,' but by that of the party to whom malice is imputed. A man may be chargeable with negligence in not duly weighing circumstances by which his passion would have been aroused, or, when aroused, would have been speedily abated. But he is not chargeable with malice when he was acting wildly and without malice, in hot blood. Hence, whether there has been cooling time, so as to impute to defendant malice, is to be decided, not by an absolute rule, but by the conditions of each case"

—citing numerous authorities. The above language is quoted with approval in State v. Grugin, 147 Mo. 39, 47 S. W. 1058, 42 L. R. A. 774, 71 Am. St. Rep. 553. We are aware that some courts have held to the contrary, but we are convinced that the rule as above announced is the more reasonable and just one. See Wharton on Homicide (3d. Ed.) section 208, and cases cited.

The next two assignments of error relate to rulings of the trial court in overruling defendant's objections to certain questions propounded to the witness Foaman by respondent's counsel, and in refusing to strike out the answers given to such questions. The questions and answers are as follows: "Q. Did Mr. Hazlett say anything to you at any time before you went into the butcher shop about the business to be conducted in it? A. He said I could run a saloon in it if I wanted to. Q. What kind of a pig, if he said anything about it? A. I don't know whether he said anything about blind pig; he said pig." We are unable to perceive how or in what manner this testimony tended to throw any light upon the issues involved. Whether the deceased was rightfully or wrongfully upon the premises where the homicide occurred was immaterial, and hence the terms or conditions of the lease between Foaman and the defendant were of no consequence, as the same could have no possible bearing upon the question as to whether the shooting was accidental or justifiable. The business relations existing between this witness and the defendant regarding the premises where the homicide occurred in no manner shed any light upon the question of defendant's guilt or innocence. We think therefore that the objection should have been sustained, and the motion to strike out such testimony granted. Whether these rulings constituted prejudicial error it is unnecessary for us to determine upon this appeal. The errors will, no doubt, be corrected upon the next trial.

Counsel for appellant next complain of certain rulings of the court based upon objections interposed by them to questions propounded to defendant on cross-examination relating to domestic troubles between the defendant and his wife. We are clear that these objections should have been sustained. The testimony in no manner tended to throw any light upon the issues involved, and it may have had a tendency to prejudice the minds of the jury. What we have said regarding the last assignment of error equally applies to assignments numbered from 46 to 67, both inclusive.

This testimony was all irrelevant and immaterial, and the objections thereto should have been sustained.

The next and last assignment of error is predicated upon the ruling of the trial court in permitting a certain question to be propounded to Mrs. Van Buskirk, and in refusing to strike out the answer to such question. The witness was asked to narrate a statement made by the deceased to her, which was clearly hearsay. This witness was also permitted to testify as to certain conduct of the deceased in attempting to borrow a gun for the purpose of meeting the defendant at a certain time in 1905. This testimony was wholly inadmissible, and the objection thereto should have been sustained.

The judgment is reversed, and a new trial ordered.

MORGAN, C. J., concurs.

SPALDING, J. (dissenting in part). I concur in the reversal of the judgment of conviction in this case, and while I agree with my associates that the instruction in the following language: "It is not enough that the party killing another believed himself in danger from the person killed, unless the facts were such that the jury in the light of all the facts and circumstances known to the slayer, or believed by him to be true, can say he had reasonable ground for such belief"—in the light of the circumstances of this case and the other instructions, is sustainable, yet, I cannot agree with the reasons given by my associates for sustaining it.

In my opinion, the other instruction complained of, wherein the trial court stated: "If between the provocation and the homicide there is sufficient time for the blood to cool and for passion to subside and reason to interpose, the provocation, however great, cannot be considered, and the court instructs you that the reasonable time within which the law presumes that the blood had cooled, and the angry passions aroused by the provocation have subsided, is the time within which an ordinary reasonable man would have cooled under like circumstances"—taken in connection with the rest of the charge on the subject, is the better rule of law. Its correctness is supported by the great weight of authority, and as I read the cases cited (State v. Grugin, 147 Mo. 39, 47 S. W. 1058, 42 L. R. A. 774, 71 Am. St. Rep. 533) it does not sustain the construction given it by my associates, and it is cited in several

textbooks as sustaining the doctrine announced in the portion of the charge above quoted. To hold.that the only standard by which to judge of the sufficiency of the cooling time is that of the defendant, it seems to me, throws upon the injured party the burden of determining, before even entering into conversation with another, his mental condition, temperament, the ease with which he is provoked, and the time it will take for him to cool after provocation, and many other equally impractical and unreasonable duties. It is clear to me that the better rule is, not the time that it would take an ideal man or the defendant, but the time it would take the average or ordinary person, to cool under like circumstances. This principle has been approved by the vast majority of our courts that have passed upon it, and I think is the well-settled rule of law on this subject. I do not care to enter into a discussion on the subject, but call attention to Ryan v. State, 115 Wis. 488, 92 N. W. 271; 1 McLain, Crim. Law, sections 337, 338; 21 Am. & Eng. Enc. Law, 177, 178; Wharton on Homicide (3d Ed.), section 205 and cases cited.

(113 N. W. 374.)