**Paul Benjamin HENLEY, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Supreme Court of Kentucky.

July 7, 1981.

Rehearing Denied Sept. 22, 1981.

Jack Emory Farley, Public Advocate, Sara L. Collins, Asst. Public Advocate, Frankfort, for appellant.

Steven L. Beshear, Atty. Gen., Robert V. Bullock, Asst. Atty. Gen., Frankfort, for appellee.

STEPHENS, Justice.

Paul Benjamin Henley was convicted of murder in the Logan Circuit Court and received a sentence of fifty years. His appeal is before us as a matter of right.

Appellant argues four grounds as the basis of his appeal: (1) The trial court erred in refusing to give an instruction on first-degree manslaughter based on an alleged extreme emotional disturbance; (2) the trial court erred in failing to conduct a pretrial competency hearing; (3) appellant did not

have counsel during his trial, and (4) the trial court erred in failing to provide for a presentence report.

## I

DID THE TRIAL COURT ERR IN REFUSING TO GIVE A FIRST DEGREE MANSLAUGHTER INSTRUCTION BASED ON ALLEGED EXTREME EMOTIONAL DISTURBANCE?

Appellant was indicted and tried for the murder of his mother-in-law, Mrs. Yvonne Parrish, under the provisions of KRS 507.-020. According to that statute, a person is guilty of murder when:

"(a) With intent to cause the death of another person, he causes the death of such person or of a third person; *except that in any prosecution a person shall not be guilty under this subsection if he acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be."* (emphasis added).

Manslaughter in the first degree, a class B felony, is defined in KRS 507.030. A person is guilty when:

. . . .

"(b) With intent to cause the death of another person he causes the death of such person or of a third person under circumstances which do not constitute murder *because he acts under the influence of extreme emotional disturbance, as defined in subsection (1)(a) of KRS 507.-020.* (emphasis added).

Murder, under the statute, is an intentional killing where the defendant is *not* acting under the influence of extreme emotional disturbance. However, there must have been a reasonable explanation or excuse for such disturbance, the reasonableness of which is to be determined from the

viewpoint of a person in the defendant's situation, as the defendant believed there to be. *Ratliff v. Commonwealth*, Ky., 567 S.W.2d 307 (1978). The absence of "extreme emotional disturbance" is an essential element of the offense of murder, and the legislature intended the Commonwealth to bear the risk of nonpersuasion on this element of mitigation. *Bartrug v. Commonwealth*, Ky., 568 S.W.2d 925 (1978).

However, an instruction setting out the mitigating circumstance of extreme emotional disturbance does not have to be given unless there is "something in the evidence sufficient to raise a reasonable doubt whether the defendant is guilty of murder or manslaughter." *Gall v. Commonwealth*, Ky., 607 S.W.2d 97, 108 (1980). See also *Ratliff v. Commonwealth, supra; Edmonds v. Commonwealth*, Ky., 586 S.W.2d 24 (1979), and *Thomas v. Commonwealth*, Ky. App., 587 S.W.2d 264 (1979). A defendant accused of murder is not automatically entitled to a first-degree manslaughter instruction. We must examine the record to determine if there is any evidence which could reasonably be interpreted to show that the appellant, when he killed Mrs. Parrish, was operating under extreme emotional disturbance.

To begin, we note that the appellant did not testify and did not offer any witnesses on his behalf. Moreover, appellant did not permit his court-appointed attorney to cross examine the witnesses. Whatever evidence of extreme emotional disturbance is in the record must be gleaned from the evidence presented by the Commonwealth.

On November 23, 1979, late in the afternoon, appellant went to his mother-in-law's house in Russellville to pick up his wife and two children. His wife answered the door and noticed that appellant had been drinking, and she refused to accompany him. According to Mrs. Henley, the following colloquy ensued:

"Q 16. Did you all have an argument or what was the nature of the conversation?

A. He wanted me to go home with him. He had been out drinking and he was not in any shape to go; I said 'not right now; if you want to set and wait awhile until you sober up or come back later me and the children will go back home with you but I'm not going with you now.'

Q 17. Did he blame your not going home on your mother?

A. Yes, he told me Mamma had talked me into staying.

Q 18. *And he said he was going to solve the problem?*

A. *Said he was going to solve the problem.*" (emphasis added) Testimony of Mrs. Henley.

And solve the problem he did! The uncontroverted testimony shows appellant left the house and went to his truck, parked some 25 feet away. He obtained a .22 caliber automatic rifle and returned to the house. Finding the door locked, he simply beat it down and entered. His mother-in-law was on the telephone attempting to call the police. Appellant, in front of his wife and children, proceeded to shoot Mrs. Parrish 13 times. When the rifle was empty, he left the house and drove to the Russellville police station. He arrived there even before the police arrived at the Parrish home. Inside the station he told the officers: "I am the one you are looking for. I did it." Several officers who observed appellant at the station testified that he was "perfectly under control, just a normal manner for an average person." Moreover, he told a deputy sheriff who happened to be in the police station that "if he had more bullets he would have shot her more."

Defendant had been drinking, but was not drunk, and there is not a scintilla of evidence to show any provocation, verbal or otherwise, by the decedent or by anyone. There is no evidence in the record that appellant had any history of physical or mental illness. Let appellant speak for himself:

"I went to the residence of my mother-in-law, Yvonne Parrish, on South Spring

Street in Russellville, Kentucky, (Logan County) to pick up my wife and kids. My wife met me at the door, we talked for a minute, and she decided she wasn't going to go home with me. We were just inside the living room at this time. I told my wife that I was going to put an end to all our problems. Then I went to the pickup and got the rifle. I went back up on the porch. I broke out the front door window and shot my mother-in-law who was standing in the second room. I fired the rifle several times. I then got back in the truck and came to the police station."

(Voluntary confession of the appellant, Paul Benjamin Henley).

We find absolutely no evidence that appellant killed Mrs. Parrish while acting under "extreme emotional disturbance."

■ It was suggested that the very nature of the homicide indicated that appellant was emotionally disturbed. If this were true, logically, one could make this argument in the case of all murders. The majority of this court is unwilling to say, as a matter of law, that the commission of a vicious murder, standing by itself, is sufficient evidence to authorize an instruction on extreme emotional disturbance.

In those cases considered by this court involving the necessity of an extreme emotional disturbance instruction, we have uniformly required some definitive, nonspeculative evidence. In *Ratliff, supra,* the instruction was mandated because two psychiatrists testified that the defendant was "very likely" psychotic at the time she committed the homicide. Even in the face of that evidence, three members of this court disagreed, denying this was adequate evidence. In *Edmonds, supra,* there was strong evidence to substantiate the claim of extreme emotional disturbance. The appellant had been hospitalized several times for mental problems, and shortly prior to the shooting, he had been taking a self-prescribed and self-concocted medication which affected him mentally. In *Gall, supra,* in

contrast, even though a psychiatrist had testified that the defendant suffered from chronic paranoid schizophrenia, we said: "There is not a shred of evidence to suggest that he was acting under the influence of an emotional disturbance. . . ." *Id.* at 109.

■ Under the facts of this case, and the precedents of this court, we believe the trial court was absolutely correct in finding that there was no showing sufficient to necessitate a first degree manslaughter instruction.

■ One further point remains. Under the provisions of KRS 507.020(1)(a), assuming, arguendo, the existence of an extreme emotional disturbance, there must *also* be a reasonable explanation or excuse for such disturbance, which reasonableness is determined from the standpoint of a person in the defendant's situation as the defendant believed his situation to be. In this case, in making this determination, we have no help from the defendant or from this record. We do not know in what situation the defendant believed himself to be other than his reference to his "solving the problem." Where the situation itself provides no justification or excuse and no other evidence is presented which would give rise to this subjective determination, a court would be remiss in allowing a jury to speculate. Under the test of the statute, the reasonableness must be submitted to the jury. When the record shows no possible excuse or justification, there is nothing to submit. *Thomas v. Commonwealth,* Ky.App., 587 S.W.2d 264 (1979).

## II

### DID THE TRIAL COURT ERR IN FAILING TO ORDER A PRETRIAL COMPETENCY HEARING?

■ It is conceded by appellee that no pretrial competency hearing was held. RCr 8.06 is as follows:

"If upon arraignment or during the proceedings *there are reasonable grounds to*

*believe that the defendant is insane*, the proceedings shall be postponed and the issue of sanity determined as provided by law . . . ." (emphasis added).

The simple answer to this argument of appellant is that an examination of the record shows that there is *no* evidence tending to show that appellant was insane. There is no merit to this argument.

### III

### DID APPELLANT HAVE COUNSEL DURING THE TRIAL?

█ The record clearly shows that Thomas Noe, a practicing attorney, was appointed on December 10, 1979, to defend appellant. He worked out a plea bargain agreement with the prosecutor, which appellant rejected. Appellant, on several occasions, informed the trial judge that he did not want or need the services of an attorney and that he did not want any defense put forth on his behalf.

In spite of appellant's repeated refusals of the services of an attorney, the trial judge directed Mr. Noe to sit with appellant during the trial and to guide and assist him. Noe did so, and participated actively from the impaneling of the jury to the filing of a notice of appeal, including the making of a final argument to the jury.

We have no trouble concluding that not only did appellant make an intelligent waiver of his right to counsel but also he did have counsel, who was very effective in assisting him, considering the fact that appellant refused his help and guidance. *Davenport v. Commonwealth*, Ky., 390 S.W.2d 662 (1965).

### IV

### DID THE TRIAL COURT ERR IN FAILING TO PROVIDE A PRESENTENCE REPORT?

█ KRS 532.050 is as follows:

"(1) *No court shall impose sentence for conviction of a felony, other than a capital offense, without first ordering a presentence investigation after conviction and giving due consideration to a written report of such investigation.*

(2) The report shall be prepared and presented by a probation officer and shall include an analysis of the defendant's history of delinquency or criminality, physical and mental condition, family situation and background, economic status, education, occupation, personal habits, and any other matters that the court directs to be included.

. . . .

(4) Before imposing sentence, the court shall advise the defendant or his counsel of the factual contents and conclusions of any presentence investigation or psychiatric examinations and afford a fair opportunity and a reasonable period of time, if the defendant so requests, to controvert them. The sources of confidential information need not, however, be disclosed." (emphasis added).

It is clear from the record, and it is conceded by appellee, that no presentence report was ordered in this case by the trial court.

Sentencing is an integral part of the criminal justice system. The General Assembly added the requirement of a presentence report so that the action of the trial judge, in passing sentence and entering judgment, could be intelligently made. The presence of an objective report is of great potential assistance to a judge as he ponders the fate of each defendant who comes before him for sentencing. We have stated that such sentencing procedure is "mandatory." *Brewer v. Commonwealth*, Ky., 550 S.W.2d 474 (1977); *Arnold v. Commonwealth*, Ky., 573 S.W.2d 344 (1978).

We, therefore, rule that it was error for the court to fail to order and consider a presentence report prior to his imposition of the sentence in this case.

The judgment of the circuit court is affirmed, but the case is remanded with directions to vacate the judgment for purposes of resentencing in compliance with the provisions of KRS 532.050.

All concur.