STATE of North Dakota, Plaintiff
and Appellee,

v.

Reginald TRIEB, Defendant
and Appellant.

Cr. No. 778.

Supreme Court of North Dakota.

Feb. 11, 1982.

650

William G. Goetz, Adams County State's Atty., Hettinger, for plaintiff and appellee State of North Dakota.

Ronald A. Reichert, of Freed, Dynes, Malloy & Reichert, Dickinson, for defendant and appellant.

VANDE WALLE, Justice.

Reginald Trieb was tried in Adams County district court for the crime of murder, a Class AA felony. He was convicted by a jury and sentenced to life in prison. He appealed from the judgment of conviction. We reverse and remand for a new trial.

I

On November 19, 1979, 19-year-old Reginald Trieb confessed to the slaying of 17-year-old Val Scott Blade. On the basis of this statement, the statement of a juvenile participant in the crime, and other corroborating evidence, Trieb was charged with murder in that he "intentionally" and "knowingly" caused the death of another human being. Sec. 12.1–16–01, N.D.C.C. On the night of the murder Blade and Trieb met by chance in a Hettinger bar. Blade bought drinks for several of the patrons, including Trieb. After Blade had purchased two cases of beer, he and Trieb left the bar and drove to Trieb's apartment.

They were in the apartment for only a short time before Blade, who was described as "intoxicated," retired to Trieb's bedroom and fell asleep. While Blade was sleeping, Trieb and Timothy Morrissey [1] stole his wallet and car keys. Trieb, Morrissey, and another young man, a minor,[2] then drove Val Blade's car to Lemmon, South Dakota. As Trieb later stated, "we ... got really drunk [and] then we came home." The murder was planned at a Lemmon bar and during the return trip to Hettinger. Trieb killed Val Blade with a jack handle while Blade was still sleeping. Trieb and his companions then took Blade's body to the nearby Grand River. Trieb shot Blade several times and left him lying on the ice.

Trieb's chief defense at trial was "lack of criminal responsibility by reason of mental disease or defect at the time of the alleged crime." To support this defense, Trieb relied on the testimony of people from his past and the expertise of a psychiatrist, Dr. Severson. According to these witnesses, Trieb's youth was marked by turmoil, trauma, and neglect. By the time of the murder, the use of alcohol and other drugs had become a constant factor in Trieb's life. Dr. Severson testified that Trieb was suffering from a mental disease or defect when he killed Val Blade. Severson described the disease as "acute alcohol intoxication, a psychosis with drug intoxication." The State called several expert witnesses in rebuttal. The essence of their testimony was that Trieb was criminally responsible for the death of Val Blade. Trieb's attorney also wanted to argue that Trieb was guilty of a lesser offense of manslaughter; he was thwarted in this effort by the judge's refusal to instruct on the offense.

The instruction "It is presumed, however, that an unlawful act was done with unlawful intent,"[3] was included in the charge

---

1. Trieb and Morrissey were charged jointly with murder; they were tried separately.

2. The minor was charged, as a juvenile, with conspiracy to commit murder.

3. The instruction on "intent," which was condemned in *State v. Sheldon*, 301 N.W.2d 604 (N.D.1980), is NDJI 1313:

 "The intent or purpose with which an act is done is a mental process and as such generally remains hidden in the mind where it is conceived, and is rarely, if ever, susceptible of proof by direct evidence. Intent may be

given to the jury on intent. Trieb now contends that the giving of this instruction constitutes reversible error.

Trieb's objection is based on *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), and *State v. Sheldon,* 301 N.W.2d 604 (N.D.1980), *cert. denied* 450 U.S. 1002, 101 S.Ct. 1711, 68 L.Ed.2d 204 (1981). In *Sandstrom, supra,* the Supreme Court held that the jury instruction "The law presumes that a person intends the ordinary consequences of his voluntary acts," violates the Due Process Clause of the Fourteenth Amendment. According to the Court, the question of "whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction." *Sandstrom, supra,* 442 U.S. at 514, 99 S.Ct. at 2454, 61 L.Ed.2d at 45. Justice Brennan, writing for a unanimous Court, reasoned that the jury may have interpreted the instruction impermissibly as a conclusive presumption or as shifting the burden of persuasion to the defendant on the critical element of intent. *Sandstrom, supra,* 442 U.S. at 517–518, 99 S.Ct. at 2456, 61 L.Ed.2d at 46–47. The Court held that the presumption is unconstitutional because either interpretation violates the due-process command that the State prove every element of a criminal offense beyond a reasonable doubt.

In *State v. Sheldon, supra,* this court held that the presumption contained in North Dakota Pattern Jury Instruction 1313, which is challenged again here, runs afoul of the directive of *Sandstrom v. Montana.* However, the court deemed the inclusion of the unconstitutional presumption "harmless error" because Sheldon was ultimately convicted of reckless endangerment, an offense which does not require the element of intent. *Sheldon, supra,* 301 N.W.2d at 613. And see *State v. Chyle,* 297 N.W.2d 409, 415–417 (N.D.1980) [where defendant was charged with criminal mischief, an offense which did not include intent as an element,

the inclusion of the presumption of intent was surplusage, removing the case from the strictures of *Sandstrom* ].

■ There can be no question that the jury instruction on "intent," identical to the charge condemned in *Sheldon,* deprived Trieb of his right to due process of law as explicated in *Sandstrom, supra.* As in *Sandstrom,* the element of "intent" was a critical component of the crime charged. Sandstrom was charged with "deliberate homicide" in that he "purposely or knowingly" caused the death of a human being. Trieb was charged with "intentionally or knowingly" causing the death of another human being. Compare *State v. Chyle, supra* [requisite mental state was recklessly]. Like Sandstrom's jurors, the members of Trieb's jury may have been misled by the instruction. They could have regarded the presumption as mandatory—an indisputable direction to find the requisite intent once convinced that the unlawful act had been committed. Like Sandstrom's jurors, the jurors in this case "were not told that they had a choice, or that they might infer that conclusion; they were told only that the law presumed it." *Sandstrom, supra,* 442 U.S. at 515, 99 S.Ct. at 2454, 61 L.Ed.2d at 45. The possibility that the jurors may have viewed the presumption as shifting the burden of persuasion to the defendant, a possibility condemned in *Sandstrom,* also exists in this case. Trieb's jurors were not told that the presumption could be rebutted at all. *Sandstrom, supra,* 442 U.S. at 517, 99 S.Ct. at 2455–2456, 61 L.Ed.2d at 46.

"Given the common definition of 'presume' as 'to suppose to be true without proof' . . . and given the lack of qualifying instructions as to the legal effect of the presumption, we cannot discount the possibility that the jury may have interpreted the instruction" [*Sandstrom, supra,* 442 U.S. at 517, 99 S.Ct. at 2456, 61 L.Ed.2d at 46] in either of the two ways held unconstitutional in *Sandstrom.*

inferred from the outward manifestations, by the words or acts of the party entertaining it, and the facts and circumstances surrounding or attending upon the acts sought to be

proved, with which it is charged to be connected. It is presumed, however, that an unlawful act was done with unlawful intent."

The State argues that the potential for these impermissible interpretations was removed by the other instructions given at trial. The State relies on the instructions given on the "interpretation of the evidence" and the "lack of criminal responsibility" to support this contention.[4]

In *Sandstrom*, a similar argument, that the error in the presumption was cured by correct charges on the presumption of innocence and the burden of proof, was rejected by the Court. As Justice Brennan explained:

"The potential for these interpretations of the presumption was not removed by the other instructions given at the trial. It is true that the jury was instructed generally that the accused was presumed innocent until proven guilty, and that the State had the burden of proving beyond a reasonable doubt that the defendant caused the death of the deceased purposely or knowingly.... But this is not rhe-torically inconsistent with a conclusive or burden-shifting presumption. The jury could have interpreted the two sets of instructions as indicating that the presumption was a means by which proof beyond a reasonable doubt as to intent could be satisfied. For example, if the presumption were viewed as conclusive, the jury could have believed that although intent must be proven beyond a reasonable doubt, proof of the voluntary slaying and its ordinary consequences constituted proof of intent beyond a reasonable doubt." *Sandstrom, supra,* 442 U.S. at 518, 99 S.Ct. at 2456, 61 L.Ed.2d at 47, n. 7.

Similarly, we do not think that the instructions on the interpretation of the evidence and the lack of criminal responsibility foreclosed the possibility that Trieb's jurors may have relied on the erroneous presumption in reaching their verdict. The instruction on interpretation of evidence is not

---

4. The instruction on "interpretation of evidence" provided:

"If the evidence in this case will admit of two constructions or interpretations, each of which appears to you to be reasonable, one of which points to the guilt of Reginald Trieb and the other to his innocence, you must adopt the interpretation which will admit of Reginald Trieb's innocence and reject that which points to his guilt.

"This rule applies only when both of the two possible opposing conclusions appear to you to be reasonable. If, on the other hand, one of the two possible conclusions appears to you to be reasonable, and the other to be unreasonable, then you must adhere to the reasonable deduction and reject the unreasonable, bearing in mind, however, that even if the reasonable deduction points to Reginald Trieb's guilt, you must be otherwise satisfied of his guilt beyond a reasonable doubt before you can find Reginald Trieb guilty."

The instruction on "lack of criminal responsibility" stated:

"All persons, with certain exceptions not pertinent to this case, are presumed responsible for his or her criminal conduct.

"Prior to trial, the Defendant, Reginald Trieb, gave notice to the prosecuting attorney and filing with the Court of his intention to rely upon the defense of lack of criminal responsibility by reason of mental disease or defect at the time of the alleged crime; this puts in issue the mental condition of the Defendant at the time of the alleged crime, and the State must then prove beyond a reasonable doubt either that the Defendant did not suffer from such a mental disease or defect existing at the time the conduct occurred or that he had substantial capacity to comprehend the harmful nature of consequences of his conduct, that his conduct was not the result of a loss or serious distortion of his capacity to recognize reality.

"If you find, therefore that the Defendant as a result of a mental disease or defect at the time of the crime, if you have determined that a crime was committed, and that he lacked (1) substantial capacity to comprehend the harmful nature or consequences of his conduct, or (2) his conduct was the result of a loss or serious distortion of his capacity to recognize reality, then you must find that the defendant lacked criminal responsibility and you must find him not guilty by reason of mental disease or defect; if however you find that as a result of such mental disease or defect of the defendant, that he did not lack substantial capacity to comprehend the harmful nature or consequence of his conduct, or that such disease or defect did not result in the loss of or serious distortion of his capacity to recognize reality, then you must find that the Defendant was responsible for his criminal conduct, if any, and if you find that the Defendant did, beyond a reasonable doubt, commit all essential elements of the act, then you must find the Defendant guilty...."

inconsistent with a conclusive presumption. If the jury viewed the presumption as conclusive, it could have reasoned that its role in interpreting the evidence was limited to evidence bearing only on the commission of the unlawful act. Once the jurors found that Trieb had committed the unlawful act, they could have relied on the presumption as a means by which proof as to intent could be satisfied.

█ The State stands on shaky ground in relying upon the criminal-responsibility instruction as an antidote to counteract the potential for improper use of the presumption. In the first place, as Trieb has argued, the instruction on criminal responsibility itself contains an unexplained presumption, i.e., "[a]ll persons, with certain exceptions not pertinent to this case, are presumed responsible for his or her criminal conduct."[5] While this presumption of sanity would not run afoul of the Constitution if its legal effect were properly explained,[6] nothing but the bare presumption was submitted to Trieb's jury. These instructions relied on by the State neither qualified nor explained how the jurors should interpret the presumption. *State v. Amado,* 433 A.2d 233 (R.I.1981); *contra, Jacks v. State,* 394 N.E.2d 166, 174–176 (Ind.1979), and *People v. Gray,* 71 App.Div.2d 295, 299–300, 423 N.Y.S.2d 66, 69 (1979), *appeal denied* 49 N.Y.2d 804, 426 N.Y.S.2d 1033, 403 N.E.2d 462 (1980). We cannot, under *Sandstrom,* discount the possibility that Trieb's jury applied the intent presumption in an unconstitutional manner. Accordingly, in view of the evidence and Trieb's reliance on the defense of mental disease or defect, we hold the instruction on intent given in this case unconstitutional.

The State has proposed several alternative bases for our affirming Trieb's conviction, even if the presumption is unconstitutional. First, the State argues that we should not consider the issue at all because the defendant did not object to the instruction at trial. While this is a correct statement of the general rule [*State v. Bartkowski,* 290 N.W.2d 218, 221 (N.D.1980)], Rule 52(b), N.D.R.Crim.P., authorizes us to notice an error raised for the first time on appeal if it infringes upon the substantial rights of the defendant. Our disposition of the case in *State v. Chyle, supra,* made it unnecessary to resolve this same question. We did note, however, that "[i]f the instruction on 'intent' . . . had been given in a situation

---

**5.** Another feature of this instruction troubles us. The instruction repeated that the jury must "find" certain facts in determining whether or not the defendant lacked criminal responsibility. See note 4, *supra.* Although the instruction did correctly inform the jury that the State must prove the absence of mental disease beyond a reasonable doubt, its clear import was that, in order to acquit, the jury must reach affirmative conclusions regarding mental disease or defect. The law is that the State must prove beyond a reasonable doubt the non-existence of a defense (i.e., lack of criminal responsibility) as to which there is evidence in the case sufficient to give rise to a reasonable doubt on the issue. Sections 12.1–04–03 and 12.1–01–03(2), N.D.C.C. While we do not, contrary to Trieb's contentions, think that the use of the word "find" alone renders the instruction unconstitutional, we do suggest that the word be deleted in similar instructions in the future.

**6.** *Sandstrom* does not invalidate the use of all presumptions and inferences. To the contrary, that decision and *Ulster County Court v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979), validate, under certain circumstances, the use of permissive inferences and rebuttable presumptions which merely shift the "burden of production" to the defendant. For a fine discussion of the categories of presumptions and their constitutionality see *Muller v. State,* 94 Wis. 450, 289 N.W.2d 570, 582–583 (1980). The key to satisfying *Sandstrom* is to explain to the jury the legal effect of the presumption. *Sandstrom* does, on the other hand, clearly invalidate all conclusive presumptions and those rebuttable presumptions which shift the burden of persuasion to the defendant. *Sandstrom, supra,* 442 U.S. at 515, 99 S.Ct. at 2458–2459, 61 L.Ed.2d at 45. No amount of explanation would justify these evidentiary devices.

We note that the defendant's requested jury instruction No. 4 adequately, although not artfully, stated the legal effect of the presumption of sanity:

"Every man is presumed to be sane and therefore responsible for his acts. That presumption no longer controls when evidence is introduced that Reginald Trieb has a mental disease or defect. The State then has the burden of proving the opposite beyond a reasonable doubt; that is, that Reginald Trieb did not have a mental disease or defect."

more closely akin to *Sandstrom* . . . we might agree that a substantial right may have been affected and that . . . Rule 52(b), N.D.R.Crim.P., would apply." 297 N.W.2d at 417.

■ *Sandstrom v. Montana* protects the precious due-process guarantee that no one shall suffer the onus of a criminal conviction except upon evidence sufficient to convince the trier of fact beyond a reasonable doubt of the existence of every element of the offense. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). *Sandstrom* prevents the usurpation of the jury's responsibility, based on the evidence adduced at trial, to find the ultimate facts beyond a reasonable doubt. It stands as a shield guarding the presumption of innocence which the law extends to every element of the crime. *Sandstrom, supra*, 442 U.S. at 523, 99 S.Ct. at 2459, 61 L.Ed.2d at 50. It is unquestionable that a violation of *Sandstrom* affects a substantial right, necessitating the application of Rule 52(b), N.D.R.Crim.P.[7] Because the situation in this case is closely akin to *Sandstrom*, we hold that the unconstitutional instruction on intent is an obvious error which should be noticed on appeal.[8] *Accord, State v. Arroyo*, 180 Conn. 149, 429 A.2d 457, 458 (1980); *People v. Wright*, 408 Mich. 1, 289 N.W.2d 1, 10–11, n. 13 (1980) [failure to object should not be made a basis for denying relief in these cases]. *Cf. State v. Lewis*, 300 N.W.2d 210, 215–216 (N.D.1980) [whether or not defendant was entitled to counsel at photographic display considered under Rule 52(b), N.D.R.Crim.P.]; *State v. Schneider*, 270 N.W.2d 787, 792 (N.D.1978) [question of violation of defendant's Fifth Amendment right to remain silent reviewed despite lack of proper objection].

■■ The State's final argument is that the inclusion of the jury instruction, even if it was defective, constituted harmless error under *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), *rehearing denied* 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967); Rule 52(a), N.D.R. Crim.P. Under *Chapman* the violation of a Federal constitutional right does not necessarily require automatic reversal. Before such an error can be declared harmless, however, a reviewing court must be able to declare a belief that it was harmless beyond a reasonable doubt. *Chapman, supra*, 386 U.S. at 24, 87 S.Ct. at 828, 17 L.Ed.2d at 711; *State v. Carmody*, 253 N.W.2d 415, 418 (N.D.1977). The beneficiary of a constitutional error bears the burden of convincing the reviewing court, beyond a reasonable doubt, that the error did not contribute to the verdict obtained. *Chapman, supra; State v. Faul*, 300 N.W.2d 827, 833 (N.D. 1980).

■ The State has not persuaded us that the inclusion of the defective presumption on "intent" was harmless error. Proof of the requisite intent was an integral component of the State's case. The challenged instruction bore directly on this key issue— whether or not Trieb "intentionally" caused the death of another human being. Indeed, the State emphasized the centrality of the issue throughout the trial. After pointing out that the State bears no burden to prove motive, the prosecutor explained:

---

7. The State's reliance on *Dietz v. Solem*, 640 F.2d 126 (8th Cir. 1981), is unpersuasive. That case holds that the "cause and prejudice" test of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), applies when a habeas corpus petitioner fails to comply with State contemporaneous-objection rules in asserting a *Sandstrom* error. The stricter "cause and prejudice" test is undergirded by principles of federalism and comity. We apply Rule 52(b), N.D.R.Crim.P., in determining whether or not failure to comply with our contemporaneous-objection rule bars consideration on appeal.

8. In arguing that we should consider this error despite his failure to object, Trieb's attorney has told us that he was "unaware of the ruling in *Sandstrom v. Montana*," and beseeched us not "to visit sins of counsel upon his client." As we base our decision solely on the "substantial rights" analysis of Rule 52(b), N.D.R. Crim.P., we have not considered the legal sufficiency of this "excuse." See, generally, *State v. Sheldon, supra*, 301 N.W.2d at 611. We note, however, that the opposite sort of behavior, i.e., failure to object as a deliberate trial tactic designed to "sandbag" the judicial process, will not be tolerated by this court.

" . . . The State only has to prove that the Defendant intentionally killed Val Blade. Now, that is the principal issue for you to consider when you deliberate at the end of this trial. Did the Defendant intentionally kill Val Scott Blade? Other side issues may crop up. Did he make a statement voluntarily? Should you be allowed to look at certain pictures, but the main issue for you to decide is did the defendant intentionally kill Val Scott Blade; . . ."

The theme of the State's artful cross-examination of Dr. Severson, Trieb's expert, was that specific actions of the defendant attendant to the crime, if proven, would indicate that the murder was "intentionally done." As an additional example, we note that the medical experts were asked whether or not Trieb had the "capacity to commit any killing intentionally" and whether or not he had the "intent to commit a crime."

■ The possibility that Trieb's jurors may have ignored the presumption does not render the error harmless. The clear teaching of *Sandstrom* is that the *mere possibility* that the jury reached its verdict in an impermissible manner requires reversal. Schmolesky, *County Court of Ulster County v. Allen and Sandstrom v. Montana: The Supreme Court Lends an Ear But Turns Its Face*, 33 Rutgers L.Rev. 261, 272 (1981); *Sandstrom, supra*. We are unable to say that the error did not contribute to the verdict obtained. Compare *State v. Sheldon, supra*.

## II

As an additional point of error, Trieb asserts that the trial court incorrectly denied his request to instruct the jury on the crime of manslaughter as a lesser included offense of murder. Although we reverse the conviction on the *Sandstrom* error, we are constrained to discuss this issue in the event Trieb is tried again. The trial judge refused the instruction because he believed "that there was no evidence . . . that would substantiate a finding of guilty of manslaughter." The court also reasoned that the defense of lack of criminal responsibility would bar conviction of manslaughter as well as murder. The judge noted his belief that "the Defendant is guilty of murder or he is not guilty by reason of mental disease or defect." Timely objection to the refusal to give the instruction was lodged by the defendant.

■ Rule 31(c), N.D.R.Crim.P., provides, in pertinent part, that "[t]he defendant may be found guilty of an offense necessarily included in the offense charged . . ." Although it was originally intended to aid the prosecution when its proof fell short of its expectations, the lesser-included-offense doctrine may be availed of as of right, by the defense in an appropriate case. See 8A Moore's *Federal Practice/Criminal Rules* ¶ 31.03[1]. In deciding whether or not a defendant is entitled to an instruction on a lesser included offense, two questions must be answered: First, does the instruction include an offense which is a lesser included offense to the offense charged? Second, does the evidence in the particular case create a reasonable doubt as to the greater offense and support beyond a reasonable doubt a conviction of the lesser included offense? *State v. Sheldon, supra; State v. Houser*, 261 N.W.2d 382, 385 (N.D.1977); *State v. Piper*, 261 N.W.2d 650, 654 (N.D. 1977).

Section 12.1–16–02, N.D.C.C., our statutory provision on manslaughter, reads:

"A person is guilty of manslaughter, a class B felony, if he:

"1. Recklessly causes the death of another human being; or

"2. Causes the death of another human being under circumstances which would be murder, except that he causes the death under the influence of extreme emotional disturbance for which there is a reasonable excuse. The reasonableness of the excuse shall be determined from the viewpoint of a person in his situation under the circumstances as he believes them to be. An emotional disturbance is excusable, within the meaning of this subsection, if it is occasioned by any provocation, event, or situation for which the offender was not culpably responsible."

Trieb contends that he was entitled to a lesser-included-offense instruction covering both "reckless" manslaughter [§ 12.1–16–02(1), N.D.C.C.] and manslaughter under excusable "emotional disturbance" [§ 12.1–16–02(2), N.D.C.C.].[9] Trieb argues that there can be no doubt that "reckless" manslaughter is a lesser included offense of murder. Section 12.1–01–04(15), N.D.C.C., defines an "included offense" as an "offense which differed from the offense charged . . . because a lesser degree of culpability suffices to establish its commission." Both murder and reckless manslaughter entail killings; "recklessly," the state of mind required for involuntary manslaughter, is less culpable than either "intentionally" or "knowingly," the culpability required for murder.

Trieb also contends that manslaughter under "extreme emotional disturbance"—voluntary manslaughter—is a lesser included offense of murder. Section 12.1–01–04(15), N.D.C.C., defines an "included offense" as an offense "which is established by proof of the same or less than all the facts required to establish commission of the offense charged; . . ." If the existence of "extreme emotional disturbance" is merely a mitigating factor or a basis for grading, and not an element of the crime, then voluntary manslaughter could be considered a lesser included offense. Assuming, without deciding, that both involuntary and voluntary manslaughter are lesser included offenses of murder, we turn our attention to the determinative question of whether or not there was a sufficient evidentiary basis adduced at the trial to warrant a manslaughter instruction.

Trieb contends that the evidence of intoxication required an instruction on involuntary manslaughter. As noted above, criminal homicide constitutes involuntary man-

slaughter whenever it is committed "recklessly." Sec. 12.1–16–02(1), N.D.C.C.

Section 12.1–02–02(1), N.D.C.C., defining the elements of culpability, states that a person engages in conduct:

"c. 'Recklessly' if he engages in the conduct in conscious and clearly unjustifiable disregard of a substantial likelihood of the existence of the relevant facts or risks, such disregard involving a gross deviation from acceptable standards of conduct, except that, as provided in section 12.-1–04–02, awareness of the risk is not required where its absence is due to self-induced intoxication."

The focus of this definition is upon "a high degree of risk of which the actor is actually aware." ALI Model Penal Code and Commentaries, Part II, § 210.3(1)(a), Comment on Manslaughter at 49 (1980). The only evidence of recklessness suggested by Trieb is his voluntary intoxication from drugs and alcohol on the night of the murder. To constitute the crime of involuntary manslaughter under Section 12.1–16–02(1), N.D.C.C., "there must be a substantial and unjustifiable risk of homicide to establish recklessness, and the risk must be perceived and ignored by the actor." ALI Model Penal Code, *supra*, § 210.3(1)(a) at 51. There was no evidence introduced at the trial to indicate that Trieb was conscious of the fact that he would brutally murder an acquaintance simply because he overimbibed. Absent evidence of this sort or any other evidence evincing a conscious and unjustifiable disregard of the risk of homicide, there is no evidentiary basis to warrant an instruction on "reckless" manslaughter.

The intoxication statute, Section 12.1–04–02, N.D.C.C., does not require a

---

9. "Reckless" manslaughter identifies the crime traditionally referred to as involuntary manslaughter; manslaughter under excusable "emotional disturbance" was historically called voluntary manslaughter. See Vol. II, *Working Papers of the National Commission on Reform of Federal Criminal Laws*, Comment on Homicide at 823 (1970); ALI Model Penal Code

§ 201.3, Comment at 40 (Tent. Draft No. 9, 1959). Our Criminal Code is modeled on the proposed Federal Criminal Code. Report of the North Dakota Legislative Council (1973) at 81. The Federal Code, in turn, relies heavily on the Model Penal Code. References to both codes are made when appropriate.

different result.[10] Under this statute, intoxication is not a defense to a criminal charge. Evidence of intoxication is admissible, however, if it is relevant to negate or establish an element of the offense charged. Section 12.1–04–02(2) provides:

"2. A person is reckless with respect to an element of an offense even though his disregard thereof is not conscious, if his not being conscious thereof is due to self-induced intoxication."

The import of this provision is "that where recklessness, i.e., disregard of a risk, is the standard of culpability for a crime, lack of awareness of the risk because of self-induced intoxication does not negate culpability." *Study Draft of a New Federal Criminal Code*, Comment on § 502 at 36 (1970). The purpose of this provision is to preclude exculpation based upon intoxication when recklessness is the standard of the offense charged. *Study Draft of a New Federal Criminal Code, supra*; Vol. I, *Working Papers of the Natl. Comm. on Reform of Federal Criminal Laws*, Consultant's Report on Intoxication Defense, 226–227 (1970); ALI Model Penal Code § 2.08, Comment at 2–9 (Tent. Draft No. 9, 1959). We do not think that this provision authorizes an instruction on "reckless" manslaughter on the sole ground of intoxication evidence. Indeed, as noted above, our statutory definition of "recklessness" precludes a holding that evidence of intoxication *alone* is sufficient to warrant an instruction on "reckless" manslaughter as a lesser included offense of murder. See, generally, 8 A.L.R.3d 1236 4[b]; Compare *People v. Cunningham*, 123 Ill.App.2d 190, 260 N.E.2d 10, 19 (1970) [voluntary intoxication cannot be used to reduce murder to involuntary manslaughter because voluntary intoxication is not a defense to a charge requiring recklessness, i.e., manslaughter], with *People v. Graham*, 71 Cal.2d 303, 78 Cal.Rptr. 217, 225, 455 P.2d 153, 161 (1969) [defendant deemed guilty of involuntary manslaughter if he voluntarily procured his own intoxication]. It is elementary that a lesser-included-offense instruction can be given only if the evidence will support beyond a reasonable doubt a conviction of the lesser included offense. *Sheldon, supra*. Because the requisite evidentiary showing of "recklessness" has not been made, we hold that the trial court properly refused to instruct the jury on involuntary manslaughter.

■ Was the trial court correct in refusing to charge the jury regarding voluntary manslaughter? This offense has two principal components: (1) the particular defendant must have "acted under the influence of extreme emotional disturbance" and (2) there must have been a "reasonable explanation or excuse" for the emotional disturbance.

Trieb points to three factors as evidence of "extreme emotional disturbance":

1. His lengthy history of drug abuse, including evidence of intoxication on the night of the murder.

2. Dr. Severson's testimony that Trieb suffered from a mental disease or defect when he killed Blade, i.e., acute alcohol intoxication, a psychosis with drug intoxication. Severson testified that this disease affected Trieb's "ability to recognize reality" and impaired his judgment and emotional response so that he "did not recognize the seriousness of what he was doing . . ."

3. Trieb's long history of "seeing" a person identical to himself when he is under stress. This person would taunt Trieb about his inadequacies. During the murder Trieb "had a brief thought to prove that he was not a chicken."

The threshold question we must decide is whether or not this evidence constitutes "extreme emotional disturbance" requiring a charge to the jury on the matter.

The legislative history explaining "extreme emotional disturbance" is lean; the drafters of the proposed Federal code state: "We would confine the lesser culpability for manslaughter to those who, when they kill,

---

**10.** We note that Section 12.1–04–02, N.D.C.C., is incorporated into the statutory definition of "recklessly." Sec. 12.1–02–02, N.D.C.C.

act under extreme, overwhelming emotion, those who are at the time on the border line of rationality." Vol. II, *Working Papers of the Natl. Comm. on Reform of Federal Criminal Laws*, Comment on Homicide at 829.

Similarly, there is a dearth of judicial construction on the subject. One court, construing a similar statute, has defined "extreme emotional disturbance" as the emotional state of an individual who: (a) has no mental disease that rises to the level of insanity; (b) is exposed to an extremely unusual and overwhelming stress; and (c) has an extreme emotional reaction to it, as a result of which there is a loss of self-control and reason is overborne by intense feelings, such as passion, anger, distress, grief, excessive agitation, or other similar emotions. *People v. Shelton*, 88 Misc.2d 136, 385 N.Y.S.2d 708, 717–718 (1976). And see *State v. Elliott*, 177 Conn. 1, 411 A.2d 3, 8 (1979) [adopting the *Shelton* definition].

 The evidence relied on by Trieb does not meet this test. After carefully scrutinizing the record, we can find no evidence that Trieb was either exposed to an "extremely unusual and overwhelming stress" or that he suffered an "extreme emotional reaction" to it. The fact that he was addicted to alcohol and suffered delusions does not suffice; rather, in every case we have read there has been some connection between the victim and the slayer precipitating or aggravating an emotional response in the defendant. See, e.g., *Elliott, supra* [defendant, who shot his brother, was acting under an extreme emotional disturbance caused by combination of child-custody problems, the inability to maintain a recently purchased home, and an overwhelming fear of his brother]; *Ratliff v. Commonwealth*, 567 S.W.2d 307 (Ky.1978) [defendant believed victim was a conspirator against her]; *People v. Casassa*, 49 N.Y.2d 668, 427 N.Y.S.2d 769, 404 N.E.2d 1310 (1980), *cert. denied* 449 U.S. 842, 101 S.Ct. 122, 66 L.Ed.2d 50 (1980) [victim rejected defendant as a suitor]. Moreover, the fact that Trieb was "very tearful and expressed feelings of guilt and remorse,"

sometime after the incident, does not indicate that he "acted under the influence of extreme emotional disturbance" in *causing* Blade's death. There is no evidence which even suggests that Blade in any manner provoked Trieb or that Trieb felt any emotion whatsoever toward Blade when he killed him.

 It is true that the present statutory formulation is broader in scope than the former "heat of passion" doctrine which it replaced. See Vol. II, *Working Papers of the Natl. Comm. on Reform of Federal Criminal Laws*, Comment on Homicide at 827–829; ALI Model Penal Code and Commentaries, Part II, § 210.3(1)(b), Comment at 53–64; *People v. Casassa, supra*, 49 N.Y.2d 668, 427 N.Y.S.2d 769, 404 N.E.2d 1310 (1980), *cert. denied* 449 U.S. 842, 101 S.Ct. 122, 66 L.Ed.2d 50 (1980) [construing a similar statute]. For example, the "heat of passion" doctrine could be invoked only by a defendant who acted "wildly," "in hot blood" upon a sudden and sufficient provocation. See *State v. Hazlett*, 16 N.D. 426, 113 N.W. 374, 381 (1907); *Territory v. Bannigan*, 1 Dak. 451, 46 N.W. 597, 601 (1877); Section 12–27–17, N.D.C.C. (repealed 1973). Additionally, a defendant could not avail himself of the doctrine if "there was sufficient cooling time for the passion to subside and reason to resume its sway." *Hazlett, supra*, 113 N.W. at 380. In contrast, under the present formula, the man who is put in a passion by brooding over his affront is not automatically excluded from mitigation. While the present statutory formula does not necessarily require a triggering event engendering wild frenzy, we are not prepared to say that a killing, unaccompanied by any emotion, was committed under the influence of "extreme emotional disturbance." See *People v. Edwards*, 64 App. Div.2d 201, 409 N.Y.S.2d 872, 873 (1978) [emotionless condition at time of murder, caused by history of drug abuse, does not constitute an "extreme emotional disturbance"]; *Sargent v. State*, 614 S.W.2d 503 (Ark.1981) [no evidence that defendant killed while acting under "extreme emotional disturbance"]. *Accord, Henley v. Com-*

*monwealth*, 621 S.W.2d 906 (Ky.1981) [court unwilling to say that commission of vicious murder is sufficient to authorize instruction]. Section 12.1–16–02(2), N.D.C.C., may have moved the law beyond its traditional moorings but it has not expanded to the point that an instruction on voluntary manslaughter was required under the circumstances of this case. Our holding that there was insufficient evidence of "extreme emotional disturbance" makes it unnecessary to discuss Trieb's contention that the violence, neglect, and sorrow that plagued his childhood is a "reasonable excuse" for the alleged emotional disturbance. Because of our holding on the *Sandstrom* issue, we find it unnecessary to discuss the other issues raised by Trieb.

For the reasons stated in this opinion, we reverse the judgment of conviction and remand the case to the district court for a new trial.

ERICKSTAD, C. J., and PAULSON and SAND, JJ., concur.

PEDERSON, Justice, concurring specially.

By applying binding precedent and ignoring the real world in which juries must operate, I concur in the disposition reached in the opinion authored by Justice Vande-Walle. I do not agree with part II of the opinion. The decision as to whether a charge to a jury under Rule 31(c), NDRCrimP, should or should not be given is dependent upon the circumstances at that particular time and place. See the wide variety of cases annotated in 102 A.L.R. 1019, 27 A.L.R. 1097, and 21 A.L.R. 603. Also, 11 A.L.R.Fed. 173. Rule 31(c) creates neither a constitutional right, nor a substantive right. We should not set down strict guidelines that may not fit the circumstances to be encountered when the matter once more comes before the court.