# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: JUNE 17, 2010
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2009-SC-000014-MR

JAMEY COPE                                          APPELLANT

V.                 ON APPEAL FROM MADISON CIRCUIT COURT
HONORABLE JEAN CHENAULT LOGUE, JUDGE
NO. 08-CR-00008

COMMONWEALTH OF KENTUCKY              APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Jamey Cope's night of revelry turned into a night of violence when he kicked out a window to enter the apartment he shared with Debra Sloan, who had locked him out, and then sliced Sloan's forehead with a knife and punched her in the face. From the criminal charges against Cope arising out of those events, a circuit court jury convicted him of one count of first-degree assault, one count of second-degree wanton endangerment, and of being a second-degree persistent felony offender (PFO 2). Cope filed this appeal claiming that the trial court erred by refusing to give an extreme emotional disturbance (EED) instruction to the jury. We disagree.

## I. FACTUAL AND PROCEDURAL HISTORY.

Cope, Sloan, and others, including Sloan's daughter, Christina Massengale, drank at a local bar. After returning home, Cope went upstairs to another apartment to visit his former girlfriend. Sloan became jealous and called Cope to tell him to come home or she would lock him out. Sloan then locked the door and told Massengale to call the police if Cope came home. When Cope arrived home and kicked the locked door, Massengale called 911. Cope then kicked out a window to gain entrance to the apartment. Cope grabbed the phone from Massengale and destroyed it. Massengale fled to fetch her brother. Once outside, Massengale flagged down an officer who had been dispatched in response to her 911 call.

Meanwhile, inside their apartment, Cope called Sloan names and threatened to kill her. Cope cut Sloan's face over her eye with a knife, jabbed the knife at Sloan's head, and punched her in the face. While trying to defend herself against the knife attack, Sloan cut her hands by grabbing the knife blade.

When police entered the apartment, Sloan and Cope were in a bedroom behind a closed door. Officers' repeated efforts to pry open the door were largely unsuccessful; although, at one point, they were able to open the door slightly and saw Cope brandishing a knife in a downward direction toward Sloan. At one point, an officer sprayed pepper spray into the bedroom. At another point, Cope swung the knife in the officers' direction.

Officers eventually splintered the door and entered the bedroom. According to their trial testimony, Cope was combative and resisted arrest. One of the officers shocked Cope with a stun gun, but Cope recovered and resumed the fight. An officer then delivered several blows to Cope's leg to get "pain compliance" from Cope. Even after the officers finally handcuffed him, Cope remained combative and threatened to kick out the windows of the police cruiser. At the police station, Cope stated that he and Sloan had gotten into an argument and that she had threatened to kill herself.

As a result of the fracas, Sloan suffered a fracture of the orbital floor of her eye socket, which required surgical repair. Sloan also suffered knife wounds to her forehead and hands. One hand required a surgical repair of damaged nerves.

The grand jury indicted Cope on one count of first-degree assault for "intentionally causing serious physical injury" to Sloan by cutting her with a knife; two counts of first-degree wanton endangerment for his actions directed at the police officer; and one count of being a PFO 2. All charges resulted in a jury trial. At the conclusion of the evidence at trial, the trial court instructed the jury on the lesser-included offenses of second-degree assault and fourth-degree assault but refused Cope's request for an EED instruction. The jury found Cope guilty of first-degree assault and one count of second-degree wanton endangerment but acquitted Cope on the other count of first-degree wanton endangerment. The jury also found Cope guilty of being a PFO 2.

3

The jury recommended that Cope be sentenced to twenty years' imprisonment on the assault conviction and twelve months' incarceration (and a $500 fine) for the misdemeanor wanton endangerment conviction. The jury recommended enhancement of Cope's assault penalty to thirty years' imprisonment as a result of his PFO 2 conviction. The trial court sentenced Cope in accordance with the jury's recommendation,[1] after which Cope filed this appeal as a matter of right.[2]

## II. ANALYSIS.

The only issue before us is whether the trial court erred by refusing to give Cope's requested EED instruction to mitigate the assault charge. In order to decide whether an EED instruction was appropriate in this case, we must first examine both the relevant statutes and our EED precedent.

As it pertains to this case, KRS 508.010(1)(a) provides that a person commits first-degree assault by "intentionally caus[ing] serious physical injury to another person by means of a deadly weapon or a dangerous instrument . . . ." Because first-degree assault is an intentional offense, EED is potentially applicable because of KRS 508.040(1), which provides that "[i]n any prosecution under KRS 508.010, 508.020 or 508.030 in which intentionally causing physical injury or serious physical injury is an element of the offense, the defendant may establish in mitigation that he acted under the influence of extreme emotional disturbance, as defined in subsection (1)(a) of

---

[1] By operation of law, the sentence for the misdemeanor wanton endangerment conviction must run concurrently with the sentence for the felony assault conviction. Kentucky Revised Statutes (KRS) 532.110(1)(a).

[2] Ky. Const. § 110(2)(b).

4

KRS 507.020." Although it pertains specifically to the offense of murder, KRS 507.020(1)(a) provides, in relevant part, that a person is not guilty "if he acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be."

A finding that a defendant acted under the influence of EED does not entitle that defendant to an outright acquittal. But a finding that a defendant acted under EED is important because it reduces the punishment a defendant may receive. In the case at hand, if Cope had been found to be acting under EED, his first-degree assault conviction, which normally is a Class B felony,[3] would have been reduced to a Class D felony.[4] In practicality, this means that Cope's possible sentence would have been reduced from a range of ten to twenty years' imprisonment to a range of one to five years' imprisonment.[5]

EED is a curious mix of the objective and the subjective. Under the terms of KRS 507.020(1), there must be a "reasonable explanation or excuse"

---

[3]  KRS 508.010(2).

[4]  KRS 508.040(2)(a).

[5]  KRS 532.060(2) provides as follows:
    The authorized maximum terms of imprisonment for felonies are:
    (a)  For a Class A felony, not less than twenty (20) years nor more than fifty (50) years, or life imprisonment;
    (b)  For a Class B felony, not less than ten (10) years nor more than twenty (20) years;
    (c)  For a Class C felony, not less than five (5) years nor more than ten (10) years; and
    (d)  For a Class D felony, not less than one (1) year nor more than five (5) years.

for the presence of EED, which connotes an objective standard;[6] but the same statutory subsection adds a subjective element when it provides that the reasonableness "is determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be."[7]

Cope asserts that this duality creates a "vexing problem" because it is unclear "[w]hat, *as a matter of law*, is the threshold level of reasonableness that a defendant must meet, and . . . what *objective* standard [must] . . . a trial court or a reviewing court [use] to determine whether the defendant's claim of EED passes that threshold level[.]" We disagree with Cope's assertion because we believe our precedent provides ample guidance about when an EED instruction is appropriate.

We have defined EED as being "a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from the impelling force of the extreme emotional disturbance rather than from evil or malicious purposes."[8] But we have stressed that "[t]here must be some definitive, non-speculative evidence to support an EED instruction."[9] So in order to receive an EED instruction, a defendant must

---

6    *Fields v. Commonwealth*, 44 S.W.3d 355, 358 (Ky. 2001) ("Reasonableness is ordinarily an objective evaluation . . . .").

7    *Id.* ("the description of EED in KRS 507.020(1)(a) recites a subjective test in that the reasonableness of the explanation or excuse is determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be.") (internal quotation marks and emphasis omitted).

8    *McClellan v. Commonwealth*, 715 S.W.2d 464, 468-69 (Ky. 1986).

9    *Hudson v. Commonwealth*, 979 S.W.2d 106, 109 (Ky. 1998). *Accord Henley v. Commonwealth*, 621 S.W.2d 906, 909 (Ky. 1981) ("In those cases considered by

present evidence that establishes adequate provocation, or a triggering event.[10] Moreover, the provocation leading to the triggering event must be continuous and uninterrupted. The provocation need not necessarily be contemporaneous with the triggering event, and the courts should look to whether there was a sufficient "cooling-off period" that rendered the response unreasonable or the provocation inadequate.[11]

On appeal, we will look to the evidence presented at trial to determine whether a trial court erred in failing to give an EED instruction.[12] An EED instruction is proper only when the evidence demonstrates that "the impelling force of the extreme emotional disturbance rather than . . . evil or malicious purposes" caused the defendant to be in "a temporary state of mind so enraged, inflamed, or disturbed" that his judgment was overcome, thereby causing a loss of control.[13]

Using those guidelines, we turn to the evidence in this case. Taken in a light most favorable to him, the evidence Cope relies upon in support of his EED claim generally is as follows:

- Cope snorted morphine and drank heavily in the hours before the assault;

---

this court involving the necessity of an extreme emotional disturbance instruction, we have uniformly required some definitive, nonspeculative evidence.").

[10] *Fields*, 44 S.W.3d at 359.

[11] *Benjamin v. Commonwealth*, 266 S.W.3d 775, 782-83 (Ky. 2008).

[12] *See generally Greene v. Commonwealth*, 197 S.W.3d 76, 82 (Ky. 2006).

[13] *See McClellan*, 715 S.W.2d at 468-69 (defining EED and providing guidance on proper jury instructions on EED).

- Sloan carried through on her threat to lock Cope out of the apartment they shared;

- Cope believed Sloan's son, with whom he did not get along, was on his way to their apartment;

- Sloan insinuated that Cope would be sent to jail; and

- Sloan allegedly threatened to kill herself and raised a knife as if to do so.

Of course, not every defendant is entitled to an EED instruction. In order to be entitled to an instruction, there must be "definitive, non-speculative" evidence of the existence of EED.[14] In other words, like any other instruction, there must first be a proper evidentiary basis for an EED instruction to be given, even under the subjective approach mandated by the statute.[15] So we reject Cope's argument, which he admits is contrary to precedent, that a court "errs when it makes a preliminary determination that the defendant's claim of EED is 'beyond belief' or subjectively unreasonable and then keeps that factual determination from the jury by failing to give a requested EED instruction." To the contrary, a court must refuse to give an EED instruction if there is no evidence sufficient to support it.[16] Of course, in

---

[14] *Hudson*, 979 S.W.2d at 109.

[15] *See, e.g., Houston v. Commonwealth*, 975 S.W.2d 925, 929 (Ky. 1998) ("Although a trial judge has a duty to prepare and give instructions on the whole law of the case, including any lesser included offenses which are supported by the evidence, that duty does not require an instruction on a theory with no evidentiary foundation.") (internal citation omitted).

[16] *See, e.g., Caudill v. Commonwealth*, 120 S.W.3d 635, 668 (Ky. 2003) ("even viewing the circumstances from Caudill's drug dependent point of view, White's mere resistance to her demand for money was not 'a reasonable explanation or excuse' for Caudill to become so enraged, inflamed or disturbed as to be entitled to the

8

determining if the evidence warrants an EED instruction, a court must view the evidence in the manner most favorable to the defendant.[17] An EED instruction, accordingly, must only be given if there is a proper evidentiary basis for it. We rely on our precedent and reject, therefore, Cope's contention that any claim of EED, no matter how outlandish or ridiculous, automatically entitles a defendant to an EED instruction. However, if an EED instruction is given, the jury must determine whether a defendant acted under EED.[18]

We must then determine if the evidence presented a question for the jury about whether Cope suffered from EED at the time he assaulted Sloan. We may quickly reject some of Cope's alleged bases for an EED instruction

---

defense of EED."); *Scrimsher v. Commonwealth*, 190 S.W.3d 318, 333 (Ky. 2006) ("No reasonable person would consider the ordinary stresses of childrearing, specifically an infant's crying and thumb-sucking, a reasonable explanation for a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from the impelling force of the extreme emotional disturbance rather than from evil or malicious purposes.") (internal quotation marks omitted); *Hudson*, 979 S.W.2d at 108-09 ("Assuming arguendo that Ms. Thompson [sic] actions – verbal and physical abuse, talking to the 'crackhead,' etc. – were sufficient to inflame Hudson's mind or to overcome his judgment, it is beyond belief that those actions, in and of themselves, establish from Hudson's point of view, a reasonable explanation or excuse for strangling the unconscious and bleeding Ms. Thompson to death."); *Neal v. Commonwealth*, 95 S.W.3d 843, 850 (Ky. 2003) ("The evidence did not justify an instruction on first-degree manslaughter with a mitigating instruction regarding extreme emotional disturbance. Neal alleges that because Strong testified that the victim had come on to Neal in a sexual way that Neal was entitled to the instructions. After this alleged occurrence, Neal left, planned the robbery, and returned to carry it out. It is incredible to believe that Neal was so enraged and disturbed as to act uncontrollably and then came back sometime later to rob the victim. There was no substantive evidence that this robbery and murder were perpetrated as a result of EED. The trial judge properly denied the requested instruction.").

[17] *Thomas v. Commonwealth*, 170 S.W.3d 343, 347 (Ky. 2005) ("Because the issue is whether there was evidence to warrant an instruction on assault under extreme emotional disturbance, we must consider the evidence in the light most favorable to Appellant.").

[18] *See, e.g., Benjamin*, 266 S.W.3d at 782 ("if evidence . . . has been established, which puts the existence of EED in dispute . . . the existence of EED becomes a question for the jury.").

9

because, even viewing the circumstances from his point of view, they do not provide a reasonable explanation or excuse for him to have become so enraged, inflamed, or disturbed as to be entitled to an EED instruction.

First, voluntary intoxication or substance abuse is an insufficient basis to mandate an EED instruction.[19] Second, anger does not entitle a defendant to an EED instruction.[20] Also, neither Cope's fear of encountering someone with whom he apparently was not on good terms, nor Sloan's locking the apparently intoxicated Cope out of their apartment, nor her insinuation that Cope would be taken to jail for his actions, are so inflaming or disturbing as to, even from Cope's point of view, cause Cope to lose control over his actions. In fact, as will be discussed later, Cope testified that, essentially, he was able to control his actions.

What we are left with is whether Cope was entitled to an EED instruction because of his contention that Sloan threatened suicide and raised a knife in a manner consistent with carrying out that threat. Under the facts of this case, no EED instruction was required.

Perhaps, one could argue, Sloan's alleged threat to commit suicide — a threat she denied making, but we must view the evidence in a light most favorable to Cope for purposes of reviewing his claim that he was entitled to an EED instruction — and the wielding of an instrument readily capable of carrying out that threat could theoretically have been a triggering event for

---

[19] *Caudill*, 120 S.W.3d at 668 ("a drug dependency or the effects of substance abuse, standing alone, does not authorize instructions on EED . . . .").

[20] *Talbott v. Commonwealth*, 968 S.W.2d 76, 85 (Ky. 1998) ("Evidence of mere 'hurt' or 'anger' is insufficient to prove extreme emotional disturbance.").

EED purposes. But in the case at hand, Cope has not pointed to any act he undertook that, even from his point of view, could reasonably be seen as being aimed at thwarting Sloan's suicidal threat. Cope did not dispute the Commonwealth's assertions in its brief that Cope claimed self-defense as the reason he assaulted Sloan. In other words, although he claims now that Sloan raised a knife as if to commit suicide, Cope testified that he punched Sloan because he believed she was going to attack him with the knife. Also, Cope testified that he was compliant with the police, which logically denotes a person who is able to control his actions, not a person who is uncontrollably inflamed. In other words, Cope's testimony failed to show how, even from his point of view, he was so inflamed or enraged by Sloan's alleged suicidal threat as to have created a jury issue about whether he was suffering from EED. As the Commonwealth notes, Cope's "own testimony supports the fact that he was in control of his actions at all times. Therefore, the trial court's refusal to give an EED instruction did not violate his rights . . . ."[21]

## III. CONCLUSION.

For the foregoing reasons, we affirm the judgment of the trial court.

All sitting. All concur.

---

[21] Unfortunately, the video record provided to us did not enable us to view Cope's testimony. But, importantly, Cope's reply brief takes issue only with the legal significance of his testimony — not with the Commonwealth's factual recitations of his trial testimony (*i.e.*, his claims regarding Sloan's suicidal ideation, his having acted in self-defense, and his having been compliant with the police).

11

COUNSEL FOR APPELLANT:

Jamesa J. Drake
Assistant Public Advocate
Department of Public Advocacy
100 Fair Oaks Lane, Suite 301
Frankfort, Kentucky 40601


COUNSEL FOR APPELLEE:

Jack Conway
Attorney General of Kentucky

Joshua D. Farley
Assistant Attorney General
Attorney General's Office
Office of Criminal Appeals
1024 Capital Center Drive
Frankfort, Kentucky 40601-8204